UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| 01 COMMUNIQUE LABORATORY, INC., | ) | Case No. 06CV0253 |
| | ) | |
| Plaintiff, | ) | JUDGE ANN ALDRICH |
| | ) | |
| v. | ) | |
| | ) | |
| CITRIX SYSTEMS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM AND ORDER |
| | ) | |

On November 2, 2006, plaintiff 01 Communique Laboratory, Inc. ("01 Communique") appeared alongside defendants Citrix Systems, Inc. and Citrix Online, LLC (referred collectively hereinafter as "Citrix") for a Markman claim construction hearing before the court. Since that hearing, the parties have also filed motions to compel discovery (Doc. No. 52) and to set a scheduling hearing. (Doc. No. 56.) All issues have been fully briefed and are ripe for adjudication.

**I. Claim Construction**

A. Standards Involved

The Federal Circuit has explained that "'[i]t is a "bedrock principle" of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude."'" *Varco, L.P. v. Pason Sys. USA Corp.*, 436 F.3d 1368, 2006 WL 229926, at *4 (Fed. Cir. 2006) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004))). Consequently, the meaning and scope of a patent's claims lie at the heart of any patent dispute.

The purpose of a Markman hearing is to ascertain the meaning of a patent's claims so that it is clear precisely what has been patented and, by consequence, the protections the patent therefore affords the patent holder. *See Phillips*, 415 F.3d at 1312. *See also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995) ("When a court construes the claims of the patent ... the court is defining the federal legal rights created by the patent document"), aff'd, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996). There is no "rigid algorithm for claim construction." *Phillips*, 415 F.3d at 1324. Rather, in construing the meaning of a patent's claims, the Court is guided by a set of principles that the Federal Circuit has described as follows:

> The claim terms "'are generally given their ordinary and customary meaning.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." *Id.* "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* "In examining the specification for proper context, however, this court will not at any time import limitations from the specification into the claims." *CollegeNet, Inc. v. Apply Yourself, Inc.*, 418 F.3d 1225, 1231 (Fed. Cir. 2005) (citing *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002)).

*Varco, L.P.*, 436 F.3d 1368, 2006 WL 229926, at *4. The starting point in claim construction therefore lies with the language of the claims themselves. *Purdue Pharma L.P. v. Endo Pharmaceuticals, Inc.*, 438 F.3d 1123, 2006 WL 231480, at *11 (Fed. Cir. 2006) (citing *Phillips*, 415 F.3d at 1312). In considering a patent's language, a court should apply the plain meaning rule, presumptively giving claim terms their ordinary, plain meaning. *Teleflex*, 299 F.3d at 1325. A court may, however, depart from a term's plain meaning if the patentee has acted as a lexicographer or otherwise limited the scope of the invention through a clear disclaimer in the specification or prosecution history. *Phillips*, 415 F.3d at 1316-17.

Of considerable import to claim construction, then, is the intrinsic evidence--the claim language, the specification, and the prosecution history as applicable. *World Kitchen (GHC), LLC v. Zyliss Haushaltwaren AG*, 151 Fed. Appx. 970, 972 (Fed. Cir. 2005) (citing *Interactive Gift Express, Inc. v. Compuserve*, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001)); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). When this intrinsic evidence provides an unambiguous description of the scope of the invention, reliance on extrinsic evidence is improper. *Vitronics Corp.*, 90 F.3d at 1582.

But although less significant than intrinsic evidence, extrinsic evidence is still of value to claim construction when necessary. *Phillips*, 415 F.3d at 1317. This latter category encompasses such things as expert and inventor testimony, as well as texts such as treatises and dictionaries. *Id.* (quoting *Markman*, 52 F.3d 967, 980). A court may entertain expert testimony for numerous purposes, such as

> to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field.

*Phillips*, 415 F.3d at 1318. The value of expert testimony in regard to claim construction is qualified, however, as an expert cannot offer an opinion of any value that is at odds with the intrinsic evidence of a patent. *Id.* (quoting *Key Pharms. v. Hercon Lab. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998)); *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 908 n.1 (Fed. Cir. 2005).

Finally, the Federal Circuit has recognized that "patent documents are meant to be 'a concise statement for persons in the field.'" *Phillips*, 415 F.3d at 1313 (quoting *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1119 (Fed. Cir. 2002)).

Cognizant of this definition and the foregoing governing principles, and having entertained argument as well as having reviewed the scope of the prior art, the court now addresses each claim-construction issue in turn.

## II.  Terms

A) "Personal Computer"

Citrix has agreed to adopt 01 Communique's construction, which is "The computer which is being accessed remotely.  This computer is a general-purpose computer designed primarily for use by an individual user."

B) "Remote Computer"

Citrix has agreed to adopt 01 Communique's construction, which is "The computer that is being used to access the personal computer."

C) "Providing access to a personal computer . . . from a remote computer"

The parties disagree about the definition of this phrase.  First, 01 Communique contends that this phrase requires no construction at all.  In the alternative, 01 Communique proposes that it means "Providing access to (i.e., permission, liberty, or ability to enter, approach, or pass to and from a place or to approach or communicate with a person or thing) the claimed personal computer . . . from a remote computer."  Citrix, meanwhile, suggests a more literal translation, to wit, "Providing a connection (i.e., a physical link via wire, radio, fiber-optic cable or other medium) between the claimed personal computer and the claimed remote computer."

When evaluating a claim term, "[i]n those cases where the ordinary meaning of a claim term as understood by a person of ordinary skill in the art is readily apparent even to lay persons, the ordinary meaning becomes the acquired meaning of the term." Herbert F. Schwartz, *Patent Law and Practice* §5.I.A.2. (5th ed. 2006) (citing *Phillips*, 415 F.3d at 1314). This phrase falls within that category; the court finds that it requires no construction.

D) "linked to"

Following the same reasoning as above, the court finds that "linked to" requires no construction.

E) "data communication facility"

Citrix asserts that this is a mean-plus-function pursuant to 35 U.S.C. Section 112, paragraph 6.

> Use of the term "means" creates a presumption that the element is to be construed in accordance with Section 112, paragraph 6. This presumption may be rebutted, however, when claim element recites sufficiently definite structure or material to perform the claimed function. Absence of the term 'means' creates a presumption that the element is not to be construed in accordance with Section 112, paragraph 6. However, this presumption may be rebutted when the claim element does not recite sufficiently definite structure or material to perform the claimed function. In determining whether these presumptions have been rebutted by a preponderance of the evidence, the court may examine the intrinsic evidence and any relevant extrinsic evidence.

Schwartz, *supra*, §5.III.C.

There are four permutations of "communication facility" at issue here, and Citrix asserts that all of them are subject to Section 112, paragraph 6. The court disagrees. The four permutations are

as follows: 1) "Data Communication Facility"; 2) "Location Facility"; 3) Communication Facility"; 4) "Data Generating Facilities."

None of these four permutations use the word "means" and Citrix fails to rebut the presumption that this is not a means-plus function by a preponderance of the evidence.  The court agrees that the specification provides a clear description of the "facilities" and particularly the "data communication facility" as a computer software product.  Indeed, the specification provides that "a number of computer program facilities are described in this invention as separate facilities for the sake of describing the invention."  '479 Patent, col. 10, lines 11-13.  Therefore, the court concludes that 01 Communique's proposed construction is correct, which is "Computer software associated with the personal computer."

F) The claimed data communication facility being "adapted to created and send a communication that include a then current dynamic public IP address (publicly addressable) or dynamic LAN IP address (publicly un-addressable) or the personal computer"

Citrix largely changed its construction of this claim in its brief from what it proposed to 01 Communique.  Therefore the court chooses to ignore Citrix's newly submitted construction, instead adopting that of 01 Communique.  Therefore the court adopts the proposed construction to mean, "The claimed data communication facility has the ability to create and send a communication that includes the current dynamic IP address of the personal computer.  This dynamic IP address may be publicly addressable or unaddressable."

G) "locator server computer" and "server computer"

01 Communique suggests that the appropriate proposed construction is "A computer which facilitates access to the personal computer from the remote computer." Citrix, meanwhile, suggests that the correct construction should be "A computer with unrestricted access to an interconnected network of computers, such as the internet."

The court agrees with Citrix that 01 Communique's construction seeks to define the claimed function of the "locator server computer" while failing to provide a construction for the "locator server computer" itself. Therefore, the court finds that Citrix's proposed construction is correct.

H) the claimed locator server computer's "location on the internet being defined by a static IP address"

01 Communique argues that no construction of this phrase is required, whereas Citrix maintains that the appropriate construction of this phrase is "The claimed locator server computer has an IP address that is fixed." In the alternative, 01 Communique argues that the appropriate proposed construction is "The Internet Protocol (IP) address of a locator sever is fixed or predetermined, as distinguished from dynamic IP addresses."

The court agrees with 01 Communique that this phrase requires no construction.

I) "location facility"

As explained in section E) above, the court agrees with 01 Communique that the appropriate construction is "Computer software associated with the locator server."

J) "a communication facility"

As explained in section E) above, the court agrees with 01 Communique that the appropriate construction is "Computer software associated with the remote computer."

K) "an intermittent basis"

Both parties have come to the agreement that this term's construction shall be "From time to time, including periodically."

L) "act as an intermediary between"

The court agrees with 01 Communique that this phrase requires no construction.

M) the claimed one or more communication sessions "being created by the location facility, in response to receipt of the request for communication with the personal computer from the remote computer"

Citrix has agreed to adopt 01 Communique's construction, which is, "The location facility creates one or more communication sessions between the personal computer and the remote computer in response to receiving a request from the remote computer."

N) the claimed one or more communication session being created by the location facility, "by determining the then current location of the personal computer"

01 Communique suggest that the appropriate construction should be "The one or more communication sessions are created by the location facility by determining a current address or

communication session for communicating with the personal computer." Citrix, however, suggests that the proper construction should be

> In response to the claimed request from the remote computer, the location facility searches the dynamic directory to obtain the current IP address of the claimed personal computer and uses that current IP address to create the requested communication channel between the remote computer and the personal computer by forwarding to the data communication facility the remote computer's request for communication with the personal computer.

The court agrees with 01 Communiques that Citrix improperly tries to read "dynamic directory" into the claim. This would violate the principle of patent law that claims should be read in light of the specification, but that features should not be imported from the specification into the claims. *SciMed Life Sys v. Advanced Cardiovascular Sys. Inc.*, 242 F.3d 1337, 1340-1341 (Fed. Cir. 2001). Therefore, the court rejects Citrix's proposed construction and instead adopts that of 01 Communique.

O) the claimed locator server computer "includes data for locating the personal computer"

01 Communique suggest that the proper construction of this phrase is "The locator server computer includes data from which it can determine how to direct communications to the personal computer." Citrix, however, argues that the proper construction is "The current dynamic IP address of the claimed personal computer is stored in the locator server's dynamic directory."

The court agrees with 01 Communique that Citrix seeks to narrowly construe the term "includes" as "stored in the locator server's dynamic directory." As previously discussed, one may not import limitations from the specifications into the claims. *Id.* Furthermore, the prosecution history can be distinguished because the cited paragraphs from the June 9, 2004 Request for Continued Examination (Doc. No. 39-3) describe how the claims as had been formulated up to that

point distinguish themselves from a particular prior art reference. Therefore, the court rejects Citrix's proposed construction and instead adopts that of 01 Communique.

P) "database"

The court agrees with 01 Communique that no construction of this phrase is required.

Q) "means for remotely accessing said database from the remote computer"

Both parties agree that this element is a means-plus-function limitation and is therefore governed by section 112, paragraph 6. The parties also agree that the claimed function for this is "accessing the database from remote computer." The disagreement remains, however, regarding what structures are disclosed in specification for performing this function.

Citrix argues that the word "access" requires that entire invention be subsumed by this phrase. The court disagrees. The patent language is clear that the means referred to consist of the three connection methods described in columns 7 and 8. Therefore, the court agrees with 01 Communique that the structure corresponding to the "means for remotely accessing said database from the remote computer" are:

> A connection between the remote computer and personal computer using a web protocol; using a Proxy Server to provide a connection between the remote computer and the personal computer; or a connection using a different protocol and protocol conversion; and equivalents thereof. Col. 7, line 62 -Col 8, line 20.

R) "communication settings associated with the data communication facility"

Citrix argues that this phrase should be construed to mean "Parameters that control the manner in which the data communication facility communicates with the server computer, including

-10-

the Registration Routine 21." The court, however, agrees with 01 Communique that the appropriate proposed construction is "Settings that control some aspect of how the data communication facility works." Specifically, the court agrees with 01 Communique that Citrix's proposed construction does not encompass all the communication settings disclosed in the specification, and would therefore be an improper limitation. To wit, the data communication facility as described in the specification is not limited in its operation to communication with the locator server computer; Citrix's construction, however, would so limit it. Therefore, the court rejects Citrix's proposed construction and instead adopts that of 01 Communique.

S) "communication settings associated with the data communication settings associated with the data communication facility to be set remotely for the personal computer from the remote computer"

Both parties have agreed to adopt the following construction: "The communication settings can be changed via the remote computer."

T) "data generating facilities"

As detailed in section E), the court agrees with 01 Communique that the appropriate proposed construction is "Computer software that generates data, such as voice message reception, fax reception, e-mail retrieval, alarm monitoring facilities, child monitoring facilities and the like."

### III. Discovery and Scheduling Hearing

A) 01 Communique's Motion to Compel Production of Financial Documents

The court agrees with 01 Communique that Citrix's refusal to produce financial documents has been unreasonable. Given the broad power and scope of the discovery rules, the court is unconvinced by Citrix's contention that the document requests are "overly broad and unduly burdensome." The court is satisfied that 01 Communique has sufficiently identified its rationale for said documents and has identified them with sufficient specificity. Therefore, 01 Communique's motion to compel documents (Doc. No. 52) is granted, and Citrix is ordered to produce financial documents responsive to 01 Communique's requests 9-10, 26, 42-43, and 46-53.

The court also notes that while it is available to mediate and settle such discovery disputes, parties should make a greater effort in scenarios such as this to confer and settle among themselves.

B) Parties' Request for a Scheduling Hearing

Both parties have requested a scheduling hearing to set a discovery schedule in this matter. The attorneys for the parties shall appear before the court for a scheduling hearing on Friday March 23, 2007 at 1:30 p.m. in Chambers 17B.

## IV. Conclusion

The court concludes that the foregoing claim constructions control. The parties shall therefore proceed in a manner consistent with the conclusions of this opinion and order. Further, the court holds that 01 Communique's motion to compel (Doc. No. 52) is granted, and that the attorneys for the parties shall appear before the court for a discovery scheduling hearing.

IT IS SO ORDERED.

           /s/ Ann Aldrich
           ANN ALDRICH
           UNITED STATES DISTRICT JUDGE

Date: March 13, 2007