UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| 01 COMMUNIQUE LABORATORY, INC., | ) | Case No. 06CV0253 |
| | ) | |
| Plaintiff, | ) | JUDGE ANN ALDRICH |
| | ) | |
| v. | ) | |
| | ) | |
| CITRIX SYSTEMS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM AND ORDER** |
| | ) | |

On February 22, 2008, the court held a hearing for defendants Citrix Systems, Inc. and Citrix Online, LLC (collectively "Citrix") to show cause why they should not be held in contempt for failure to produce source code in compliance with this court's order of January 19, 2007.[1] For the reasons set forth below, the court does not hold Citrix in contempt. However, in light of Citrix's extreme negligence in uploading the entirety of its source code, the court invokes its inherent power to compensate Communique for attorneys' fees and expert costs incurred as a result of Citrix's negligence.

**I.      Background**

This patent case involves the validity, and alleged infringement, of patent number 6,928,479 ("the '479 patent"), which is held by plaintiff 01 Communique Laboratory, Inc. ("Communique"). The '479 patent relates to a system, computer product, and method for remotely accessing a personal computer from a web browser. Communique claims that GoToMyPC, a similar software product sold by Citrix, infringes the '479 patent.

---

[1] On March 12, 2008, the court stayed all aspects of this case, with the exception of Communique's motion to show cause, to allow the Patent and Trademark Office to reexamine the '479 patent.

During discovery, Communique sought to examine Citrix's source code for GoToMyPC. Citrix objected to the request for a variety of reasons, prompting Communique to send a letter to the court on July 24, 2006 requesting an order that Citrix produce its source code. The court held a discovery hearing on August 15, 2006 to address four discovery disputes, one of which included the production of source code. During the hearing, the parties argued about the manner in which Citrix would produce its source code, prompting the court to request that the parties submit post-hearing briefs on the manner of source code production. Based on the parties post-hearing briefs, the court issued an order on January 19, 2007 dealing with the manner of source code production:

> The court has been fully briefed regarding the parties' dispute over the manner of source code production. With respect to the manner in which Citrix Systems, Inc., et al. ("Citrix") shall produce its source code, the court hereby orders that Citrix shall load all of the requested source code onto a dedicated server so that 01 Communique Laboratory, Inc. ("01") can access the source code via the internet. The logon function shall be a general logon so that Citrix cannot identify the identity of the party logging on. The server should also allow multiple parties to be logged in at the same time. Citrix shall not monitor the portions of the source code that are printed or searched, nor shall Citrix monitor the amount of time spent logged on to the dedicated server.

(Doc. No. 64.)

Citrix uploaded its source code during the first week of February, 2007. However, Communique was not satisfied with the manner of production and sent a letter to the court on February 12, 2007, requesting that the court order Citrix to produce its source code on DVDs. Citrix responded by letter on March 22, 2007, urging the court not to alter the manner of source code production. The court never altered the January 19th order.

Meanwhile, Communique discovered that Citrix had failed to upload the poll server source code for GoToMyPC versions 5.0 and 6.0 and sent a letter relaying that information to Citrix on March 9, 2007. On April 26, 2007, Citrix uploaded the missing source code. Four days later, Communique filed

the instant motion to show cause why Citrix should not be held in contempt for failing to produce its source code in compliance with the court's January 19th order.

**II.     Discussion**

   *A.     Contempt*

It is within the court's power to hold a litigant in contempt for failure to comply with the court's order as long as the order in question is clear and unambiguous. *See United States v. Conces*, 507 F.3d 1028, 1041-42 (6th Cir. 2007); *Grace v. Ctr for Auto Safety*, 72 F.3d 1236, 1242 (6th Cir. 1996). Any ambiguities in the order must be construed in favor of the party charged with contempt. *Conces*, 507 F.3d at 1042; *Grace*, 72 F.3d at 1241. For example, in *Grace*, the district court's order stated that "the parties and their attorneys and office staff" would have access to a particular deposition. 72 F.3d at 1241. The district court interpreted "attorneys" to mean attorneys who had filed appearances in the lawsuit, and accordingly held the defendant in contempt when he gave a copy of the deposition to an attorney who had not filed an appearance. *Id.* at 1237, 1241. The Sixth Circuit reversed because the district court's order had to be interpreted in favor of the defendant, the party charged with contempt, meaning that "attorneys" must be interpreted to mean any attorney working for the defendants in the lawsuit, regardless of whether the attorney had filed an appearance. *Id.* at 1241.

Although the parties do not directly address whether the January 19th order is clear and unambiguous, through the parties' briefing, it has come to the court's attention that an ambiguity does exist. Specifically, the parties disagree about whether that order is an order compelling Citrix to produce its source code, or an order mandating the manner in which Citrix should produce its source code. Thus the parties differing views regarding the nature of the order reveals a latent ambiguity.

Although the plain language of the January 19th order states that Citrix was to produce "all of the requested source code," the rest of the record, in addition to letters the parties sent to the court over the past year, indicate that the purpose of the order was to compel the manner of production, not the entirety of the code. For example, at the August 15, 2006 discovery hearing, counsel for Citrix stated that it was "willing to produce the source code . . . . [and] make the source code available for inspection, substantially the entire database." (Doc. No. 34 at 13.) In response, the court asked what the parties were arguing about, to which counsel for Citrix explained "[i]t is just the manner of production that we are here discussing." (Doc. No. 34 at 13.) It was from that context that the court requested that the parties submit further briefing on the *manner* of source code production; the court relied on those briefs in issuing the January 19th order.

Further, the court must construe any ambiguities in the January 19th order in favor of Citrix, the party charged with contempt. Accordingly, the court must construe that order as pertaining to the manner of source code production. Because Citrix has complied with the court's order as to the manner of production, holding it in contempt would not be proper.

### B. Inherent Power Sanctions

Although the court declines to hold Citrix in contempt, it does not condone Citrix's conduct in failing to upload the entirety of its source code. If the court deems Citrix's conduct in bad faith, or tantamount to bad faith, it may invoke its inherent power to impose sanctions. *See Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003).

In this case, Citrix's extreme negligence in uploading its source code is conduct tantamount to bad faith. As already noted, Citrix told the court during the August 15, 2006 discovery hearing that it was willing to make "substantially the entire database" of its source code available. Communique has

indicated that the missing source code comprised approximately 25% of the total source code ultimately produced, meaning that Citrix only produced 75% of the requested code; such production falls short of "substantially the entire database." However, neither the written record nor the evidence proffered at the show cause hearing clearly shows that Citrix's failure to produce the source code was deliberate. Rather, this appears to be an extreme case of negligence, as evidenced in part by Citrix's March 22, 2007 letter to the court. In that letter, Citrix wrote that it had "loaded all requested source code onto a dedicated server," in spite of receiving notice from Communique on March 9th that certain source code was missing. Therefore, although the record does not clearly show that Citrix acted deliberately, it does clearly show that Citrix acted extremely negligently.

In light of the foregoing, the court finds Citrix's negligence tantamount to bad faith. Accordingly, pursuant to the court's inherent power, the court awards Communique attorneys' fees and expert costs incurred as a result of Citrix's negligence.[2]

Specifically, the court awards Communique reasonable attorneys' fees relating to its March 9, 2007 letter, reasonable attorneys' fees relating to its April 20, 2007 motion to preclude,[3] and reasonable expert costs incurred *only* in determining that the source code was missing. The court accordingly directs Communique to submit (1) an affidavit establishing the lodestar rate for the type of work

---

[2] Because the code was ultimately produced well before discovery closed on November 2, 2007, Communique will not be prejudiced at trial by Citrix's delay. Accordingly, the court refrains from imposing evidence-based sanctions.

[3] Communique filed a motion to preclude on April 20, 2007. That motion, which arose from the withheld source code, sought to preclude Citrix from offering evidence of non-infringement at trial. Although that motion was withdrawn months later, its filing appears to have prompted Citrix to produce the missing source code; only four days later Citrix engineer Scott Marshall discovered the code had not been uploaded.

performed in this matter, based upon the geographic area where Communique's counsel operates, (2) an itemized statement of the attorneys' fees incurred in preparing the March 9th letter and March 20th motion to preclude, and (3) an itemized statement relating to costs incurred by Communique's expert in discovering the missing source code. Any brief in support submitted by Communique shall not exceed five pages.

       IT IS SO ORDERED.

                                         */s/ Ann Aldrich*
                                         ANN ALDRICH
                                         UNITED STATES DISTRICT JUDGE

Dated: March 20, 2008