# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| 01 COMMUNIQUE LABORATORY, INC., | ) ) | CASE NO. 1:06-cv-253 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| CITRIX SYSTEMS, INC., et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Plaintiff 01 Communique Laboratory, Inc. ("plaintiff" or "Communique") brought this action on February 1, 2006, alleging that defendants Citrix Systems, Inc. and Citrix Online, LLC (collectively "defendants" or "Citrix"), infringe U.S. Patent No. 6,928,479 (the "'479 patent"). (Doc. No. 294-1 ["'479 patent"]). "[D]etermining infringement is a two-step process." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, *Inc.,* 381 F.3d 1111, 1115 (Fed. Cir. 2004) (citation omitted). Before the merits of plaintiff's infringement allegations can be decided, the meaning and scope of the asserted claims must be determined. *Id*.

The Court's construction of the '479 patent claims now at issue takes place in the context of a long history, including claim construction by another judge, reexamination of the '479 patent by the United States Patent and Trademark Office ("USPTO"), and litigation of the '479 patent in another venue. Against that background, discussed in greater detail below, the Court conducted a hearing to determine the proper

construction of the disputed claim terms. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996). Prior to the *Markman* hearing, the parties fully briefed their respective positions regarding construction of the disputed claims.[1]

Having considered the parties' briefs, exhibits, and arguments presented at the *Markman* hearing, the Court construes the disputed claim terms as set forth herein.

# I. BACKGROUND

## A. The '479 Patent

The '479 patent is owned by plaintiff and the claimed invention allows individuals to remotely access a personal computer from any device with an internet connection. For example, when an individual is working away from the office, the claimed invention allows that person to access the computer on her desk from a home computer when working from home, or from a laptop computer or mobile device when traveling. The dispute in this infringement action revolves around the manner in which that remote access occurs.

## B. Prior Claim Construction and Re-examination

When first filed in 2006, this case was before United States District Court Judge Aldrich. Judge Aldrich conducted a claim construction hearing and issued an order construing the 20 claim terms of the '479 patent then at issue. (Doc. No. 73 (First Claim Construction Order ["First CC Order"].) Citrix sought reconsideration of that first claim

---

[1] Communique's opening claim construction brief (Doc. No. 281 ["Pltf. CC Br."]) and Citrix's rebuttal claim construction brief (Doc. No. 289 ["Def. Reb. Br."). Citrix's opening claim construction brief (Doc. No. 282 ["Def. CC Br."]) and Communique's rebuttal claim construction brief (Doc. No. 290 ["Pltf. Reb. Br."]). In addition, Communique and Citrix filed supplemental claim construction charts. (Doc. Nos. 299 and 300, respectively.)

construction order (Doc. No. 87 [Motion for Reconsideration]), but Judge Aldrich declined to revise her order, finding that "there is no clear error of law, nor new dispositive evidence[.]" (Doc. No. 127 [Memorandum and Order Denying Citrix's Motion for Reconsideration] at 2990.[2])

Thereafter, Citrix requested reexamination of the '479 patent by the USPTO based on new prior art references, and moved to stay the case on the grounds that it was "highly likely" that the '479 patent would not survive reexamination. (Doc. No. 162 at 4121.) Judge Aldrich granted defendants' motion and stayed the case (Doc. No. 215), but the '479 patent did survive reexamination and was not invalidated, and Citrix's reexamination petition was dismissed by the USPTO. (Doc. No. 230-2.)[3]

## C. Third Amended Complaint and Claim Construction

After the reexamination petition was dismissed and the case was assigned to this Court, plaintiff moved to lift the stay and reopen the case. When that motion was fully briefed, the Court conducted a hearing and thereafter granted Communique's motion to lift the stay. (*See* Non-document Order Feb. 25, 2014.)

Communique subsequently filed a second, and then a third, amended complaint (Doc. Nos. 271 and 294, respectively). In its third amended complaint, plaintiff claims that defendants' product—"GoToMyPC"—infringes the '479 patent. Citrix filed a

---

[2] All references to page numbers are to the page identification numbers generated by the Court's electronic docketing system.

[3] Citrix appealed the dismissal to the Patent Trial and Appeal Board ("PTAB"), but the dismissal of the reexamination petition was affirmed. (Doc. No. 236-2.)  Citrix further appealed the decision of the PTAB to the United States Court of Appeals for the Federal Circuit, but the Federal Circuit affirmed the PTAB. (Fed. Cir. Case No. 14-1240, Doc. No. 40-2, Oct. 16, 2014.) On May 18, 2015, the USPTO issued the Inter Partes Reexamination Certificate confirming the patentability of claims 24 and 45, which are at issue in this case. (*See* Doc. No. 342-1 at 11442.)

counterclaim, seeking a declaration of non-infringement and that one or more claims of the '479 patent are invalid and/or unenforceable. (Doc. No. 308.)

In their briefs on plaintiff's motion to lift the stay, the parties also advanced their respective positions as to whether Judge Aldrich's claim construction should be revisited in light of the reexamination record of the '479 patent. Citrix argued that during reexamination Communique significantly narrowed the scope of the claims, thereby requiring this Court to revisit the first claim construction order. Communique disputed that claims were narrowed during reexamination, and argued that a second claim construction was unnecessary.

During the hearing on plaintiff's motion to lift the stay, the Court also entertained arguments on the issue of whether the first claim construction order should be revisited in light of the reexamination record. (*See* Doc. No. 243 (Transcript of hearing on plaintiff's motion to lift stay ["Tr."]).) At the hearing, Communique conceded that it was the Court's duty to determine the meaning of patent claims "and that duty continues up to the charging conference," and there is no "bar against Citrix raising an argument [to revisit] claim construction, if they can show that [the reexamination] should change the meaning of the claim terms[.]" (Tr. at 6419-20.)

After considering the parties' positions and the law on the issue of revisiting claim construction, the Court concluded that it was required to consider the impact, if any, of the '479 patent reexamination upon the prior claim construction. (*Id*. at 6425.) The Court further concluded that the first step in that process was for Citrix to identify the specific claim terms that Citrix believes were narrowed during the reexamination process, and to explain why that supplemental information should change

4

the prior construction of those terms. (*Id.* at 6427.) Accordingly, the Court ordered claim construction briefing,[4] and scheduled the *Markman* hearing referred to earlier.

### D. *01 Communique v. LogMeIn*

During the time this case was stayed, Communique was involved in litigation in the Eastern District of Virginia with defendant LogMeIn, Inc. regarding alleged infringement of the '479 patent—the same patent at issue in this case. *01 Communique Laboratory, Inc. v. LogMeIn, Inc.,* Civil Action No. 1:10-cv-1007 (E.D. Va.). The *LogMeIn* case ultimately resulted in two appeals to the Federal Circuit.

The first appeal occurred when the district court granted summary judgment to LogMeIn based on the construction of a single claim term—"location facility." Communique appealed, and the Federal Circuit disagreed with the district court's construction and arrived at its own construction of "location facility." *01 Communique Laboratory, Inc. v. LogMeIn, Inc.,* 687 F.3d 1292, 1299-1300 (Fed. Cir. 2012).[5] The claim term "location facility" is also a disputed term in this action, and the relevance of the Federal Circuit's construction of "location facility" to this Court's construction of that term is analyzed separately, below.

---

[4] The Court notes that in their claim construction briefs, the parties again argued their respective positions as to whether this Court should revisit claim construction. The Court has already decided that issue and will not address that topic again in this claim construction opinion.

[5] The Federal Circuit vacated the district court's grant of summary judgment to LogMeIn and remanded the case to the district court for further proceedings.  Upon remand, a jury trial was conducted and the jury made a finding of non-infringement of claim 24 of the '479 patent by LogMeIn, and a finding of validity as to claim 24 of the '479 patent in favor of Communique. *LogMeIn*, Civil Action No. 1:10-cv-1007, 2013 WL 3270648, at *1 (E.D. Va. June 25, 2013). After trial, Communique moved for judgment as a matter of law and a new trial, and defendant LogMeIn filed a renewed motion for judgment of unenforceability and a conditional motion for a new trial. Both motions were denied by the district court (*id.*) and both sides appealed. The Federal Circuit affirmed the district court without opinion. *LogMeIn*, 563 F. App'x 770 (Fed. Cir. 2014).

Citrix contends that the *LogMeIn* litigation is also generally relevant to this Court's construction of the disputed claim terms because of statements made in *LogMeIn* by plaintiff's expert, Dr. Gregory Ganger ("Ganger"). Citrix argues that Ganger's statements constitute judicial admissions that bind Communique with respect to the construction of disputed claim terms in this case. (Doc. No. 318 (Transcript of Markman hearing ["Markman Tr."]) at 10617-18).

But defendants' argument is not persuasive. Judicial admissions typically concern only matters of fact, which would otherwise require evidentiary proof. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) ("Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.") (internal quotation marks and citations omitted); *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 394 (6th Cir 2007) (citing *MacDonald v GMC*, 110 F.3d 337, 340 (6th Cir. 1997)). "[A] statement must be deliberate, clear and unambiguous and expressly concede . . . an alleged fact in order to be treated as a judicial admission." *Kay v. Minacs Group (USA), Inc.* 580 F. App'x 327, 331 (6th Cir. 2014) (internal quotation marks and citations omitted). Further, judicial admissions are generally binding only in the case in which the admission was made; although not binding, a court may consider the admission as evidence in another case. *See In re Kattouah*, 452 B.R. 604, 608 (E.D. Mich. 2011) (citations omitted).

Statements of opinion and legal conclusions do not constitute judicial admissions. *Roger Miller Music,* 477 F.3d at 394 (citing *MacDonald*, 110 F.3d at 341); *Am. Towers LLC v. BPI, Inc.*, Civil No. 12-139-ART, 2014 WL 7237980, at *6 (E.D. Ky.

6

Dec. 17, 2014) ("reluctant" to classify even clear statements of opinions or legal conclusions as judicial admissions) (citing *MacDonald*, 110 F.3d at 341); *Bianco v. Hultsteg AB*, No. 05 C 0538, 2009 WL 347002, at *12 (N.D. Ill. Feb. 5, 2009) ("[W]e are not persuaded that the judicial admission doctrine applies to statements by an expert during his deposition testimony.").

Whether to consider a statement a judicial admission lies within the sound discretion of the Court. *See Am. Bonding Co. Inc. v. Am. Contractors, Indem. Co.,* No, 2:10-cv-441, 2015 WL 1623821, at *3 (S.D. Ohio Apr. 10, 2015) (citing *United States v. Burns*, 109 F. App'x 52, 58 (6th Cir. 2004)). In this instance, Ganger's statements as plaintiff's expert in the Eastern District of Virginia were statements of opinion, not of fact, made in the context of another case, and the Court concludes that Ganger's prior statements in *LogMeIn* do not constitute judicial admissions. The Federal Circuit has established a hierarchy of evidence to be considered when construing claim terms, and the Court will consider Ganger's statements, to the extent that such consideration is appropriate, in accordance with those guidelines.

## II. DISCUSSION

### A. Claim Term Construction Standard

"It is a bedrock principle of patent law that the claims of the patent define the invention to which the patentee is entitled the right to exclude." *Innova,* 381 F.3d at 1115 (citations omitted). Claim construction is a matter of law to be decided exclusively by the Court. *Markman v. Westview Instruments*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).

There are two sources that a court may use for guidance in determining the proper construction of a claim term: intrinsic evidence and extrinsic evidence. "It is well settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing *Markman*, 52 F.3d at 979). "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Id*.

The appropriate starting place for claim construction is the language of the asserted claim itself. *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) (citation omitted); *Innova*, 381 F.3d at 1116. "[T]he words of a claim are generally given their ordinary and customary meaning. . . . [T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention[.]" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (internal quotation marks and citations omitted).

Sometimes, a claim term's ordinary meaning "may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. . . . In such circumstances, general purpose dictionaries may be helpful." *Phillips*, 415 F.3d at 1314 (internal citations omitted). But in other cases, the disputed terms have a particular meaning in a field of art, and the meaning of such a term as understood by persons of skill in the art is not immediately apparent, and "the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed

8

claim language to mean." *Phillips*, 415 F.3d at 1314 (internal quotation marks and citation omitted).

A person of ordinary skill in the art ascertains the plain and ordinary meaning of a claim term in the context of the specification and prosecution history. *Golden Bridge Tech. Inc. v. Apple, Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (citing *Phillips*, 415 F.3d at 1313). The specification is "highly relevant to the claim construction analysis" and is "the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. But "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark*, 156 F.3d at 1187 (internal quotation marks and citations omitted). That said, claims must be construed so as to be consistent with the specification. *See Phillips*, 415 F.3d at 1316.

Like the specification, a patent's prosecution history also provides context for the construction of claim terms. The prosecution history constitutes the public record of the patentee's representations concerning the scope and meaning of the claims.[6] *See Bell Atl. Network Servs. v. Covad Commc'n Grp., Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001) (citations omitted). But "because the prosecution history represents an ongoing negotiation between the [Patent and Trademark Office] and the inventor, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *3M*

---

[6] The reexamination record is part of the prosecution history, and therefore, intrinsic evidence to be considered as part of claim term construction. *See Krippelz v. Ford Motor Co*., 667 F.3d 1261, 1266-67 (Fed. Cir. 2012); *Irrevocable Trust of Anthony J. Antonious v. Nike, Inc.*, Civil Action No. 11-cv-06327(KM), 2014 WL 69156, at *4 (D.N.J. Jan. 8, 2014) (citing *Krippelz* 667 F.3d at 1266).

*Innovative Prop. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013) (internal quotation marks and citations omitted).

The general rule of construing claim terms according to their plain and ordinary meaning in the context of the specification and prosecution history does not apply: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC,* 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citation omitted). But in order "[t]o act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning and must clearly express an intent to redefine the term." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) (internal quotation marks and citations omitted). Similarly, disavowal or disclaimer requires that the specification or prosecution history make clear that the invention does not include a particular feature or that the invention is clearly limited to a particular form of the invention. *Id.* at 1372; *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003) (disavowals or disclaimers must be clear and unambiguous). When the specification or prosecution history clearly contain a special definition of a claim term, or a clear and unambiguous disavowal or disclaimer, then that definition and/or limitation controls over the plain and ordinary meaning of the claim term. *See Phillips*, 415 F.3d at 1316-17.

Generally, analysis of the intrinsic evidence is sufficient to resolve claim construction disputes, and it is neither necessary nor proper to rely on extrinsic evidence. *Vitronics*, 90 F.3d at 1583 (citation omitted). But if consideration of intrinsic evidence is

not sufficient, then extrinsic evidence may be considered to assist the court in determining the meaning and scope of claim terms. *Id.* (citation omitted). Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips,* 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980). But while extrinsic evidence may "shed useful light on the relevant art," it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* (internal quotation marks and citations omitted). Although extrinsic evidence may be useful to educate the Court regarding the field of the claimed invention, and to determine what a person of ordinary skill in the art would understand the claim terms to mean, extrinsic evidence must be considered in the context of the intrinsic evidence in order to arrive at a reliable construction of patent claims. *See Phillips*, 415 F.3d at 1319.

## B. Disputed Claim Terms

Communique limits its infringement claim in the third amended complaint to independent claim 24[7] and dependent claim 45[8]; all of the disputed claim terms are contained in claim 24. (Pltf. CC Br. at 7715 n.5.) There are six disputed terms in claim 24, two of which appear in the preamble.

The text of claim 24 is set forth in its entirety, below. The two disputed terms in the preamble are indicated in bold italicized typeface, and the four disputed

---

[7] Claim 24 was one of the claims construed by the prior claim construction opinion (First CC Order at 553), and was part of the reexamination process (*see* Doc. No. 230-1 [Inter Partes Reexamination Communication].)

[8] "The computer program product claimed in claim 24, wherein by operation of the location facility the personal computer is operable to receive and act on commands from the remote computer for remote control and/or remote access of the personal computer from the remote computer." ('479 Patent Col. 16:30-34.)

terms in the body of claim 24 appear in bold underlined typeface.[9]

24.     A computer program product for use on a ***server computer linked to the Internet and having a static IP[10] address***, for ***providing access to a personal computer from a remote computer***, the personal computer being linked to the Internet, its location on the Internet being defined by either (i) a dynamic public IP address (publicly addressable), or (ii) a dynamic LAN IP address (publicly un-addressable), the computer program product comprising:

(a) a computer usable medium;

(b) computer readable program code recorded or storable in the computer useable medium, the computer readable program code defining a server computer program on the server computer wherein:

(i) the server computer program is operable to enable a connection between the remote computer and the server computer; and

(ii) the server computer program includes a **location facility** and is responsive to a request from the remote computer to communicate with the personal computer to act as an **intermediary between** the personal computer and the remote computer by creating one or more communication sessions there between, said one or more communication sessions being created by the location facility, in response to receipt of the request for communication with the personal computer from the remote computer, by **determining a then current location of the personal computer** and **creating a communication channel between the remote computer and the personal computer**, the location facility being operable to create such communication channel whether the personal computer is linked to the Internet directly (with a publicly addressable) dynamic IP address or indirectly via an Internet gateway/proxy (with a publicly un-addressable dynamic LAN IP address).

('479 patent, Col. 13:48-66-Col. 14:1-15 (footnote added).)

---

[9] *See* Pltf. CC Br. at 7715-16; Doc. Nos. 282-1 at 7857 and 282-24 at 9018.

[10] IP is the standard abbreviation for "internet protocol."

### 1. Preamble of Claim 24

The parties disagree as to whether the preamble limits the disputed claim terms in the body of claim 24.[11] If the preamble is not limiting, then the disputed terms in the preamble need not be construed.

As a preliminary matter, the parties disagree about the subject matter of claim 24. The preamble of claim 24 on its face claims "a computer program product," consisting of a computer useable medium (such as a hard disc drive) containing the server computer program, which includes a "location facility." In defendants' view, the claim deals with an entire system for providing remote access, not just a "computer program product." Plaintiff disagrees, arguing that claim 24 is limited to "a computer program product," and pointing to other claims in '479 patent that claim a "system." (Markman Tr. at 10670-72.)

Defendants' position is not persuasive. The '479 patent summary of invention describes "a system, computer product, and method" for providing remote access. ('479 patent, Col. 3:27-44.) There are five independent claims in the '479 patent. Claims 1 and 20 claim: "A system for . . ." ('479 patent, Col. 10:38-67-Col. 11:1-15; Col. 12:22-65.) Independent claim 21 claims "A method of . . . ." ('479 patent, Col. 12:66-67-Col. 13:1-38.) And the last two independent claims, 24 and 26, claim: "A computer program product for . . ." ('479 patent, Col. 13:48-67-Col. 14:1-35; Col. 14:22-56.) In claim drafting, multiple claims with different scopes allow the applicant to address

---

[11] Both sides agree that while claim 24 was one of the claims previously construed by Judge Aldrich, the prior claim construction did not address the question of whether the preamble limits the body of claim 24. (Markman Tr. at 10678.)

various aspects of an invention, and that is the case in the '479 patent. *See* Faber on Mechanics of Claim Drafting, Sixth Edition, Chapter 2, § 2:10—Independent Claims. Claims 1 and 20 claim a system, showing that the patentee knew how to claim a system in the '479 patent. The plain language of claim 24 on its face claims a "computer program product"—not a "system." The Court now turns to the analysis of whether the preamble of claim 24 is limiting.

"Generally, the preamble does not limit the claims." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002) (citing *DeGeorge v. Bernier*, 768 F.2d 1318, 1322 n.3 (Fed. Cir. 1985)). A preamble is not generally limiting when: (1) the body of the claim describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention; or (2) the preamble language merely extols the benefits or features of the claimed invention, unless those benefits or features are patentably significant. *Catalina Mktg., Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002) (citations omitted). In addition, a preamble which describes the use or purpose of the claimed invention is not generally limiting. *Id.* But "[w]hether a preamble stating the purpose and context of the invention constitutes a limitation of the claimed [invention] is determined on the facts of each case in light of the overall form of the claim, and the inventions as described in the specification and illuminated in the prosecution history." *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1572-73 (Fed. Cir. 1996) (citations omitted).

There is no "litmus test" for determining when a preamble limits claim scope, but some "guideposts" have emerged from the case law regarding when a

14

preamble *may* do so. *Catalina Mktg.*, 289 F.3d at 808 (citations omitted). Those guideposts include: (1) dependence of the claim on a disputed preamble phrase for antecedent basis, indicating that both the preamble and claim body are required to define the claimed invention; (2) "when the preamble is essential to understand limitations or terms in the claim body[;]" (3) when the preamble recites "additional structure or steps underscored as important by the specification[;]" or (4) "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art . . . because such reliance indicates use of the preamble to define, in part, the claimed invention." *Id.* at 808-09 (citations omitted).

On its face, the language (underlined) of the preamble describes the use and purpose of the claimed computer program product:

> A computer program product for use on a ***server computer linked to the Internet and having a static IP address***, for ***providing access to a personal computer from a remote computer***, the personal computer being linked to the Internet, its location on the Internet being defined by either (i) a dynamic public IP address (publicly addressable), or (ii) a dynamic LAN IP address (publicly un-addressable), the computer program product comprising:

A preamble that simply states the intended use or purpose of the invention, and describes the context or reference points that provide guidance in understanding and construing the claim, does not limit the claim. *See C.R. Bard, Inc. v. M3 Sys., Inc.,* 157 F.3d 1340, 1350 (Fed. Cir. 1998); *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1341-42 (Fed. Cir. 2003) (citing *C. R. Bard*, 157 F.3d at 1350)).

In *C.R. Bard,* the text of the claim was as follows:

**21.** A biopsy needle <u>for use with</u> a tissue sampling device having a housing with a forward end, a first slide mounted for longitudinal motion within said housing, and a second slide mounted for longitudinal motion within said housing, said biopsy needle comprising:

a hollow first needle having proximal and distal ends;

a second needle extending through said hollow first needle and freely slidable therewithin, said second needle having proximal and distal ends;

a first head mounted to said proximal end of said hollow first needle, said first head including first flange means associated therewith for coupling said hollow first needle to said first slide for longitudinal motion both toward and away from said forward end of said housing; and

a second head mounted to said proximal end of said second needle, said second head including second flange means associated therewith for coupling said second needle to said second slide for longitudinal motion both toward and away from said forward end of said housing.

*C.R. Bard*, 157 F.3d at 1348-49 (emphasis added).

The court in *C.R. Bard* concluded that the invention claimed was the biopsy needle, not the housing into which the needle fits, and the housing described in the preamble was not a limitation on the claimed invention because "the preamble simply states the intended use or purpose of the invention[.]" *C.R. Bard* 157 F.3d at 1350 (citation omitted). In this case, the plain language of the preamble describes the hardware that the claimed computer program product is to be used with, and what the computer program is used for vis-a'-vis a personal computer and a remote computer. The claim claims software, not hardware, and the body of the claim describes in detail what the computer program does without need for consideration of the preamble. This weighs in favor of a conclusion that the preamble is not limiting.

16

Citrix argues that three of the *Catalina Marketing* guideposts for determining when a preamble may limit a claim apply here: (1) the preamble provides an antecedent basis for some of the claim terms; (2) the preamble recites additional structure deemed important by the specification and not found elsewhere in the claim; and (3) the preamble contains claim limitations relied upon to distinguish prior art. (Def. CC Br. at 7849-51.)

With respect to the first, defendants contend that the preamble provides the antecedent basis for the terms "server computer," "personal computer," and "remote computer" that appear in the body of claim 24, and the preamble contains a limitation (static IP address of the server computer) not found elsewhere in the claim. From this defendant urges the Court to conclude that both the preamble, and the body of claim 24, are required to define the invention.

But simply because the preamble contains a grammatically antecedent reference to a term in the body does not necessarily mean that the preamble limits the claim. In *C.R. Bard*, the claimed invention was the needle, not the housing into which the needle fit. The structure of the housing recited in the preamble provides the antecedent basis for the reference to "said housing" in the body of the claim, but the court in *C.R. Bard* found that the antecedent reference to the housing did not limit the claim because "the preamble of claim 21 recites the portion and structure of the gun housing into which the needles fit, and provides reference points in the gun that aid in defining the needle as set forth in the body of the claim." *C.R. Bard* 157 F.3d at 1350; *see also Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 879-80 (Fed. Cir. 1991). Similarly in this case, the remote, server and personal computers in the preamble

17

are merely grammatically antecedent, providing reference points for the claimed computer program product's intended use and the hardware on which it is used. This weighs in favor of a conclusion that the preamble of claim 24 is not limiting. *C.R. Bard,* 157 F.3d at 1350; *Catalina Mktg.,* 289 F.3d at 808; *see also Sentry Protection Prod., Inc. v. Eagle Mfg. Co.,* No. 1:01 CV 2240, 2004 WL 5315005, at *4 (N.D. Ohio Mar. 31, 2004) ("structural support" appearing in both preamble and claim body is a statement of intended use and reference point, and not a claim limitation).

The preamble phrase "having a static IP address" does not provide an antecedent basis for the body of claim 24, which does not contain this term. But Citrix argues that this term is limiting because: (a) "having a static IP address" is important in the specification; (b) it is not found elsewhere in the claim; and (c) without the preamble the claim does not define a complete invention. (Def. CC Br. at 7850 citing '479 patent, Col. 3:9-23 and Col. 7:24-36 ("The Internet Protocol address of the Server Computer . . . is fixed and known to the system described herein."); *Impulse Tech. Ltd. v. Nintendo of Am., Inc.*, No. 1:11-cv-2519, 2012 WL 479635, at *8 (N.D. Ohio Oct. 9, 2012).) Citrix also argues that the limitation of "a static IP address" means "one IP address." (Markman Tr. at 10653.)

Defendants' citation to *Impulse Tech*. is inapposite to this analysis. The claim at issue in *Impulse Tech*. was expressed in a means plus function format. The preamble describes the function, and without the preamble, the claimed invention was not sufficiently described. *Impulse Tech*., 2012 WL 479635, at *8. Claim 24 is not a means plus function claim.

18

While a preferred embodiment of the '479 patent cited by Citrix utilizes a locator server with fixed IP address, the invention claimed in claim 24 is a computer program product *for use on* a server computer having a static IP address. Citrix points to nothing in the specification or preferred embodiments indicating that a static IP address for the server computer (hardware) that the claimed computer program (software) runs on is essential to the program itself, or that the program could not perform as claimed in the absence of a static IP address. *Symantec Corp. v. Computer Assoc. Int'l, Inc.,* 522 F.3d 1279, 1288 (Fed. Cir. 2008) (preamble only limiting if recites essential structure or steps (citing *Catalina Mktg*., 289 F.3d at 808)). Further, the body of claim 24 describes in complete detail what it is that the computer program product does with respect to the hardware on which, and for which, the computer program product performs. *Intirtool, Ltd v. Texar Corp*., 369 F.3d 1289, 1295 (Fed. Cir. 2004) (if the body of the claim describes a structurally complete invention the preamble is generally not limiting) (quoting *Catalina Mktg.*, 289 F.3d at 808-09).

Accordingly, the Court concludes that defendant's second guidepost from *Catalina Marketing* does not support a conclusion that the preamble limits claim 24.

Finally, defendants contend that the preamble of claim 24 is limiting because it "contains claim limitations that were relied upon by the patentee to distinguish prior art." (Def. CC Br. at 7849.) The claim limitation to which Citrix refers is the static IP address of the locator server computer. (Def. CC Br. at 7851.) Citrix specifically refers the Court to pages 14 and 15 of Communique's response to an USPTO Office Action during reexamination, dated August 18, 2004, which initially rejected certain claims based on U.S. Patent No. 6,466,981 (hereinafter "Levy") and U.S. Patent No. 6,614,774

(hereinafter "Wang"). (Doc. No. 282-22 ["Office Action"] at 9008-15; Doc. No. 282-17 ["Response to Office Action"] at 8905-06.) Citrix argues that Communique relied on the limitation of a server computer with a static IP address to distinguish the '479 patent from Levy and Wang, and therefore this limitation in the preamble limits the scope of claim 24.

But this is not an accurate characterization of Communique's response to the Office Action. Communique's reference to a static IP address of the locator server made in paragraph (d) is made in the context of its introductory remarks regarding the '479 patent. (Response to Office Action at 8904-05.) Plaintiff's specific response to the Office Action regarding Levy and Wang follows that introduction, and a static IP address of the locator server is not used to distinguish those patents. (*Id.* at 8906-07.)

With respect to Levy, Communique points out that Levy "is concerned with the creation of an Internet connection at the laptop, which is one particular embodiment of the claimed **'remote computer'**. This is clearly assumed in Applicant's invention . . . [as] the **'remote computer'** is already claimed to be **'linked to the Internet.'** Applicant is not interested in patenting a particular solution for configuring the **'remote computer'** to connect to the Internet, but rather locating the **'personal computer'** so as to permit a communication session to be established between the **'personal computer'** and the **'remote computer'** as specifically claimed." (*Id.* at 8906-07 (emphasis in original).) Communique's response regarding Levy contains no limitation regarding the server computer. With respect to Wang, Communique's response was similar, and contains no limitation regarding the server computer. (*Id.* at 8907-08 ("Wang relates to technology that enables the management (creation and assignment) of

20

IP addresses in a mobile network. . . . The claimed invention assumes that a dynamic IP address has already been assigned to the **"personal computer[.]"**) (emphasis in original.)

A preamble may be limiting if there is "clear reliance" on the preamble during prosecution to distinguish the claimed invention from prior art. See *Catalina Mktg.,* 289 F.3d at 809. But that is not the case here. Communique did not rely on a "server computer with a static IP address" to distinguish the '479 patent from Levy or Wang, and therefore the preamble is not limiting on that basis.

Whether a preamble is limiting is determined on a case-by-case basis in light of the claim, specification and prosecution history. *See Applied Materials,* 98 F.3d at 1572-73. In this case, the preamble of the claim describes the hardware that the claimed "computer program product" is used with, and generally states the purpose and use of the claimed invention. The claim body contains complete details of the claimed invention without need for the preamble. Further, the prosecution history does not clearly and unambiguously indicate that the scope of claim 24 was limited by the static IP address of the locator server in order to distinguish prior art. Accordingly, the Court concludes that the preamble of claim 24 does not "breathe life and meaning into the claim" nor is "necessary to give life, meaning, and vitality" to claim 24. *Innova*, 381 F.3d at 1118; *Intirtool, Ltd v. Texar Corp*., 369 F.3d at 1295 (quoting *Catalina Mktg.*, 289 F.3d at 807-08).

Thus, the Court finds that the preamble is not limiting. Having determined that the preamble does not limit claim 24, the Court declines to construe the disputed terms in the preamble.

## 2. "location facility"

The first disputed term in the body of claim 24 is "location facility." This term was the subject of construction by the Federal Circuit in *LogMeIn*, as discussed, *supra*. The district court in *LogMeIn* had concluded that "the location facility must be contained on a single physical computer[.]" *LogMeIn*, 687 F.3d at 1295. But the Federal Circuit found that this construction was incorrect and the location facility may be distributed among one or more locator servers, construing "location facility" to mean:

> Software on a locator server computer that: (1) receives a request for communication with the personal computer from a remote computer; (2) determines the then current location of the personal computer; (3) creates a communication channel between the remote computer and personal computer; and (4) creates one or more communication sessions between the remote computer and the personal computer. The locator server may comprise one or more computers, and the location facility may be distributed among one or more locator server computers.

*LogMeIn*, 687 F.3d at 1299-1300.

Claim construction is a matter of law, and Communique maintains that the Federal Circuit's construction of "location facility" is binding on this Court pursuant to the doctrine of *stare decisis*. (Pltf. CC Br. at 7722-23, 7729.) *See Eolas Tech., Inc. v. Adobe Sys., Inc.*, Case No. 6:09-CV-446, 2011 WL 11070303, at *2 (E.D. Tex. Sept. 23, 2011) ("The Supreme Court has decided that claim construction is a matter of law; thus, when the Federal Circuit construes a term, it does so as a matter of law and its holding is binding. *See Markman*, 517 U.S. at 391; [collecting cases, further citations omitted]."); *Rambus Inc. v. Hynix Semiconductor, Inc.*, 569 F. Supp. 2d 946, 963-64 (N.D. Cal. 2008) ("A district court must apply the Federal Circuit's claim construction even where a non-party to the initial litigation would like to present new arguments." (citations omitted));

*Amgen, Inc. v. Hoffmann-LaRoche Ltd*., 494 F. Supp. 2d 54, 60-61 (D. Mass. 2007) ("Where the Federal Circuit has already construed the claims here disputed, then that higher Court's construction is binding, and this Court cannot modify its holding. This is the exact result that the Supreme Court intended in *Markman* when it held both that claim construction was a matter for the judge and that stare decisis principles should apply in the patent context. *Markman*, 517 U.S. at 391, 116 S. Ct. 1384. Other courts agree. [collecting cases, other citations omitted].").

Citrix acknowledges the doctrine of *stare decisis*, but advances three separate arguments as to why that doctrine should not be applied in this case, and the Court should substitute the word "Software" at the beginning of the Federal Circuit's construction with "A computer program." Communique objects, arguing that "software" is generally considered a plural term meaning multiple computer programs (Pltf. CC Br. at 7730), and defendants seek this change in order to limit the location facility to one computer program. (*See* Def. Reb. Br. at 9065-67.)

Defendants first argue that the *LogMeIn* decision did not decide whether "location facility" is a single program or multiple programs, and that question remains an open issue requiring "clarification" by this Court in construing "location facility." (Def. CC Br. at 7846.) In support, Citrix points to an exchange between plaintiff's counsel and one of the Federal Circuit panel members during oral argument in the second *LogMeIn* appeal before the Federal Circuit. (*Id.* at 7846, citing the Court to the recording of the oral argument before the Federal Circuit available at http://www.cafc.uscourts.gov/oral-argument-recordings/13-1479/all at 11:30, 27:45, 34:30.)

During the *Markman* hearing, plaintiff's counsel read the excerpt at issue from a prepared transcript of the oral argument:

> So this is the transcript of it. Judge Bryson simply said to me, "With respect to program, I understand the [first LogMeIn] opinion—" that would be the first one, the one that concluded what location facility meant—"dealt with different computers, not addressing the question of whether these were different programs, even though a single program could be spread over multiple computers." That was Judge Bryson's question. . . . So Judge Bryson was just saying, well, I thought that they hadn't decided that issue yet. I said, respectfully, Your Honor, I think that [the Federal Circuit's opinion in the first *LogMeIn* appeal did decide that issue]. I pointed him to that place. He said, "Does that mean that any time different computers are operating in conjunction with one another, but each operating entirely separate programs, that has to be treated as a single program for purposes of analyzing the locator facility? That issue doesn't seem to be addressed by the [Federal Circuit in the first opinion]."

(Markman Tr. at 10773-74.)

But this issue was not the subject of further discussion—or opinion—by the Federal Circuit in the second *LogMeIn* appeal, and the Federal Circuit affirmed the district court without opinion. *01 Communique Laboratory, Inc. v. LogMeIn, Inc.*, 563 F. App'x 770 (Fed. Cir. 2014).

Defendants' first argument is not persuasive. A single question by a Federal Circuit panel member at oral argument does not constitute the type of evidence that the Federal Circuit in *Phillips* instructed this Court to follow when construing claims, and without more, does not provide a basis upon which to abandon the principles of *stare decisis*. The Federal Circuit specifically construed the term "location facility" in a lawsuit involving the '479 patent, and that construction is binding on this Court. As one court has observed:

Courts are not free to second-guess the Federal Circuit's prior decisions on issues of law, such as claim construction, unless there is an exception. Some recognized exceptions include: the discovery of new and different material evidence that was not presented in a prior action; an intervening change in controlling legal authority; or when a prior decision is clearly wrong and its preservation would manifest an injustice. The issue of *stare decisis* becomes difficult when plaintiff secures a claim construction of a term against one defendant and that construction becomes binding as to all future defendants regardless of the initial scope [of the ] arguments raised. However, the principal of *stare decisis* would lose all meaning if a later defendant could unbind itself by merely framing the issue differently. The Federal Circuit's decision is binding as a matter of law and a district court must apply the Federal Circuit's claim construction even where a non-party to the initial litigation would like to present new arguments.

*Trading Tech. Int'l, Inc. v. CQG, Inc*., Case No. 05-cv-4811, 2014 WL 1645838, at *2-3 (N.D. Ill. Apr. 24, 2014) (citing, among other authorities, *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 375 F.3d 1367, 1372 (Fed. Cir.2004) (internal quotation marks and other citations omitted)).

Citrix next contends that a revision to the Federal Circuit's construction is warranted because plaintiff limited the scope of "location facility" to one computer program during reexamination in order to distinguish the '479 patent from prior art. "A patentee's statements during reexamination can be considered during claim construction, in keeping with the doctrine of prosecution disclaimer." *LogMeIn*, 687 F.3d at 1297 (quoting *Krippelz,* 667 F.3d at 1266). But any such limitation during reexamination must be clear and unambiguous. *Id.* ("When the patentee makes clear and unmistakable prosecution arguments limiting the meaning of a claim term in order to overcome a rejection, the courts must limit the relevant claim term to exclude the disclaimed matter." (*quoting SanDisk Corp. v. Memorex Prods., Inc.,* 415 F.3d 1278, 1286 (Fed. Cir. 2005)); *Omega Eng'g Inc.*, 334 F.3d at 1325.

In support of such a reexamination limitation, Citrix points to Ganger's second declaration wherein he distinguishes the '479 patent from ILS and NetMeeting:

> [A]ll '479 Patent claims require that the location facility create a communication channel between the remote computer and the personal computer. It is not enough for the location facility to assist, enable, or be used by some other component (e.g., the remote computer) that creates the communication channel—the location facility must create it.

(Def. CC Br. at 7847, citing Doc. No. 282-8 (Second Declaration of Gregory R. Ganger ["Second Ganger Dec."]) ¶ 23.)

But the Federal Circuit considered this point in *LogMeIn*, and concluded that Ganger was "differentiating between technology in which the location facility *itself* creates the communication channel and technology in which some component *other than the location facility* creates the communication channel. . . . Dr. Ganger did not address whether the location facility must be contained on a single locator server computer or may be distributed among multiple locator server computers." *LogMeIn*, 687 F.3d at 1298 (emphasis in original). This Court also concludes that Ganger's statement deals with an entirely different issue than whether the location facility consists of one or more computer programs, and in any case, does not clearly and unambiguously limit the "location facility" to one computer program.

Finally, Citrix contends Ganger's reexamination statement distinguishing the '479 patent from NAT P2P also limits the "location facility" to a single computer program:

> In the systems described in the NAT P2P references, there is no location facility that creates a communication channel between a remote computer and a personal computer, as required by all '479 Patent claims. These systems include a server (the alleged locator server), called the "address server" in the NAT P2P reference and the "well-known server" in the NAT

26

P2P Games reference, that allows peer computers to learn each others' IP addresses. Much like with the ILS and WINS servers discussed in earlier sections, this address/well-known server provides IP address information to peers, which then create communication channels themselves, as needed - the address/well-known server does not create a communication channel, as required by all '479 Patent claims.

(Second Ganger Dec. ¶ 42; *see* Dec. CC Br. at 7847.)

But as above, the cited statement is inapposite. Ganger's statement distinguishing NAT P2P addresses how the communication channel is created—in the case of NAT P2P, by the peer (i.e., remote and personal) computers versus by the location facility—not whether the location facility on the locator server is a single computer program or multiple computer programs.

For these reasons, the Court concludes that there is no basis upon which to abandon the principle of *stare decisis*, and that it is bound by the Federal Circuit's construction of "location facility."

Even if not bound by the Federal Circuit's claim construction, the Court would still conclude that "location facility" is not limited to one computer program. "The terms 'facility' and 'program' are used interchangeably in the specification, suggesting that the 'facilities' referenced throughout the patent are software[.]" *LogMeIn*, 687 F.3d at 1296 (citations to the '479 patent specification omitted). The specification provides that the server computer may comprise one or more computers. *Id*. at 1297 (citing the '479 patent, Col. 5:24-25.) "The specification discloses that 'a number of computer program facilities are described in this invention as separate facilities for the sake of describing the invention. However, it should be understood that . . . such facilities can be sub-divided into separate facilities.' '479 Patent col. 10 ll. 11-16. Read together, the

27

disclosures that facilities may be subdivided and that the locator server may comprise multiple computers support a construction that the location facility may be distributed among multiple physical computers." *Id*. Based on the language of the '479 patent and upon the Federal Circuit's reasoning, the Court finds that the '479 patent does not limit "location facility" to one computer program.[12]

Citrix's proposed construction is rejected, and the Federal Circuit's construction of "location facility" in *LogMeIn* is adopted by the Court as the construction of "location facility" in this case. Accordingly, "location facility" means:

> Software on a locator server computer that: (1) receives a request for communication with the personal computer from a remote computer; (2) determines the then current location of the personal computer; (3) creates a communication channel between the remote computer and personal computer; and (4) creates one or more communication sessions between the remote computer and the personal computer. The locator server may comprise one or more computers, and the location facility may be distributed among one or more locator server computers.

### 3. "intermediary between"

The next disputed term in claim 24 is "intermediary between:"

* * * *

(ii) the server computer program includes a location facility and is responsive to a request from the remote computer to communicate with the personal computer to act as an **intermediary between** the personal computer and the remote computer by creating one or more communication sessions there between, said one or more communication sessions being created by the location facility . . .

---

[12] Even were the Court persuaded to substitute "software" for "a computer program," the result would be the same. The general rule is that 'a' or 'an' means "one or more." *LogMeIn*, 687 F.3d at 1297. To achieve a construction that "location facility" was limited to "a computer program," Citrix must demonstrate a clear and unambiguous basis for departing from the general rule, which it cannot do. *See LogMeIn,* 687 F.3d at 1297.

This term was previously construed by Judge Aldrich, who determined that no construction was required. (First CC Order at 1645.) Communique maintains that nothing in the intervening reexamination warrants disturbing this construction.[13] (Pltf. CC Br. at 7730.)

Citrix disagrees, and is of the view that both the reexamination record and specification of the '479 patent support the following construction:

> a non-3rd party server that, in response to a request for communication (in contrast to a request for information such as an IP address), creates a direct communication channel (i.e., without an intervening locator server) and communication sessions between the personal computer and the remote computer.

(Def. CC Br. at 7840.)

For purposes of discussion, Citrix divides the proposed construction into three segments: (1) a non-3rd party server that, (2) in response to a request for communication (in contrast to a request for information such as an IP address), and (3) creates a direct communication channel (i.e. without an intervening locator server) and communication sessions between the personal computer and the remote computer.

Citrix does not contend that any aspect of the reexamination record supports the first segment of its proposed construction. Rather, Citrix's argument is entirely grounded in the language of the '479 patent, which lists the many disadvantages of prior art systems requiring a 3rd party intermediary. Citrix concludes from this "disparagement" that the patent teaches that the "intermediary" must be a non-3rd party system. (Def. CC Br. at 7840-41 (citing '479 patent, Col. 1:64-65; Col. 3:8-10 and

---

[13] Alternatively, Communique proposes the following construction: "a computer (or group of computers) that creates one or more communication sessions between." (Pltf. CC Br. at 7730.)

*Chicago Bd. Options Exch, Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1372 (Fed. Cir. 2012) ("Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.").)

The second portion of defendants' proposed construction limits the response of the server computer to a "request for communication (in contrast to a request for information such as an IP address)." In support of this language, Citrix points to statements made by Communique during reexamination to distinguish the '479 patent from NetMeeting and ILS as follows:

> [T]he NetMeeting and ILS references, either separately or taken in combination, describe remote computers sending a "request for information" to the ILS server so that the server will return the IP address of the target NetMeeting host to the NetMeeting client. This "request for information" is not a "request for communication" as required by all claims of the '479 Patent. The ILS Server does not act as an intermediary, and it is incapable of creating any communication channel and/or communication sessions between a remote computer and personal computer. Yet, all claims of the '479 patent require that the locator server acts as an intermediary between the personal and remote computers by performing several specified functions "<u>in response to the request for communication</u>" with the personal computer from the remote computer.

(Doc. No. 282-18 (Declaration of Gregory R. Ganger ["Ganger Dec."]) ¶ 35) (emphasis in original).

The reexamination record does not support Citrix's argument or proposed construction. Ganger's statement distinguishes the prior art by explaining that the prior art's capabilities are narrow—limited to simply responding to a request from the remote computer to provide the IP address of the personal computer—and the ILS server is incapable of creating any communication channels or sessions between the personal and remote computers, or otherwise acting as an intermediary between the remote and personal computers. Contrasting the '479 patent, Ganger explains that a "request for communication" is much broader than a limited "request for information," and the server computer, acting as an intermediary between the remote and personal computer, performs "several specified functions" in response to this broader request from the remote computer. However, Ganger does not state that the request for communication excludes a request for information.

Distinguishing prior art based on the prior art's limitations, without more, will not be construed as an intentional disclaimer or disavowal of claim scope. *See Ventana Medical Sys. v. Biogenex Lab, Inc.,* 473 F.3d 1173, 1180-81 (Fed. Cir. 2006) (citations omitted). Were it otherwise, every feature of prior art would automatically be disclaimed. Ganger's statement, distinguishing the locator server in the '479 patent from the limited role of the ILS server to provide the IP address of the personal computer, does not clearly and unambiguously exclude that narrow prior art function from the locator server's broader role of responding to a request for communication. Indeed, the claim states that "determining the then current location of the personal computer" is one of several tasks performed by the software in response to a request for communication.

The final portion of defendants' proposed construction of "intermediary between" is: "creates a direct communication channel (i.e. without an intervening locator server) and communication sessions between the personal computer and the remote computer." The "direct connection" issue was the subject of a lengthy debate between the parties, and a significant amount of time was spent on this topic in the *Markman* hearing.[14]

In support of its position that the '479 patent teaches only a direct connection, Citrix points to both the '479 patent specification and statements by Communique's expert during the reexamination proceedings. Starting with the specification, Citrix cites the '479 patent language below, from which Citrix urges the Court to conclude that the patent teaches only a direct connection between the remote and personal computers because the locator server is not part of the communication channel. (Def. CC Br. at 78–36.) Communique agrees that the first connection described is direct, but argues that the second connection describes an indirect connection through a Proxy Server.

> In the embodiment of the present invention illustrated herein, three connection methods are specifically provided for sake of illustration, as between the Requesting Device and Private Server.
>
> First, a Direct Connection can be provided using a secure web protocol such as "https," in a manner that is well known. In this method, once Server Computer has validated the connection requested provided by the Requesting Device, the Requesting Device is simply forwarded to the Private Server in a manner that is well known. Thereafter, all interactions will take place directly between the Requesting Device and the Private Server during the communication session.

---

[14] This issue is central not only to defendants' proposed construction of the term "intermediary between," but also to defendants' proposed construction of another disputed claim term in the body of claim 24— "creating a communication channel between the remote computer and the personal computer."

Second, where the Server Computer has network access to Private Server but Private Server is not accessible from the Internet, and may have a network address that is only valid within the network, a Proxy Server (not shown) is used to provide the connection between the Requesting Device and Private Server, in a manner that is also well known.

[The parties agree that the third connection method is not relevant herein.]

('479 patent, Col. 7:62-Col. 8:13 (internal citations to figure references omitted).)

Figure 1 of the '479 patent, shown below, is useful in understanding the parties' different views on the direct connection issue.



Figure 1

Citrix contends that the communication channel between the remote and personal computers is direct, as is illustrated by the set of dotted lines in the middle of Figure 1, with no intervening locator server in the communication channel. (Def. CC Br. at 7835-36.) But Communique argues that the '479 patent teaches two different connection methods—direct and indirect—as shown by the *two sets* of dotted lines in Figure 1, with the indirect connection illustrated by the pair of dotted lines that appear on the far right side of Figure 1. Citrix has an explanation for the second set of dotted lines on the far right side of Figure 1 that is consistent with its "direct connection" construction. According to Citrix, the two sets of dotted lines in Figure 1 is simply an illustration of the two steps involved in the first (direct) connection method. Citrix reasons that the set of dotted lines on the far right of Figure 1 represents the initial communications between the remote computer, locator server, and personal computer, and the set of dotted lines in the middle of Figure 1 represents the direct communication session between the remote and personal computers, which takes place over the Internet after the remote computer is forwarded to the personal computer by the server computer. (Def. Reb. Br. at 9057.)

The "direct connection" debate is intertwined with a disagreement between the parties about the "Proxy Server (not shown)." To begin understanding this issue, there are two proxies identified in the '479 patent that are relevant to this dispute. The first is the "Proxy Server (not shown)" identified in the second connection method, above. ('479 patent Col. 8:11.) The second is the "Internet gateway/proxy" which appears in claim 24 with respect to a personal computer with a publicly un-addressable dynamic LAN IP address. ('479 patent Col. 11:13-15.)

34

Communique maintains that the "Proxy Server (not shown)" and the Internet/gateway proxy are entirely separate, and that the Proxy Server is part of the location facility residing on the locator server. Citrix contends that there is only one proxy, and that it is *not* part of the locator server.

The Court notes that Citrix's current view of the location of the proxy server is quite different from the position it held in its claim construction brief filed for the first *Markman* hearing before Judge Aldrich. In its first brief, the Federal Circuit in *LogMeIn* had not yet construed "location facility," and that term was in dispute before Judge Aldrich. Citrix's proposed construction of "location facility" at that time included the Proxy Server as part of the location facility,[15] which resides on the locator server.

Further in support of its position that the proxy is not part of the locator server and that '479 patent teaches only a direct connection, Citrix offers a statement made by Communique's expert during the reexamination with respect to PhonePatch, which "was created and marketed to address the inability of ILS+NetMeeting to support use with publicly unaddressable LAN IP addresses."[16] Ganger states:

> Because PhonePatch is part of the Internet gateway/proxy used to link LAN computers to the Internet, it cannot reasonably be seen as part of the location facility . . . the location facility is part of the locator server, which is explicitly distinct in all '479 Patent claims from the Internet gateway/proxy.

(Second Ganger Dec. ¶ 36.)

---

[15] "Accordingly, the claimed 'location facility' should be construed to cover a system comprising 'Server Computer 12,' 'directory service program 28,' the 'dynamic directory associated with the directory service program 28," the 'remote computer,' and a 'Proxy Server' and equivalents thereof." (Doc. No. 39 at 567-568.)

[16] Second Ganger Dec. ¶ 33.

According to Citrix, Ganger's statement that the locator server is distinct from the Internet gateway/proxy establishes that the locator server is not part of the communication channel between the remote and personal computers. But Citrix ignores Ganger's first declaration distinguishing the Proxy Server and Internet/gateway proxy as two separate devices and conflates the two. Ganger states in his first declaration:

> It is well understood on June 16, 2000 that, if personal computer is located behind an Internet gateway or proxy, its publicly unaddressable dynamic LAN IP address would not be part of the IP packet header received at a server computer outside the LAN. Instead, the server computer would receive a publicly addressable IP address via which it would be able to communicate back through the LAN gateway/proxy that is a necessary and inherent part of the LAN that links the personal computer to the Internet, whereas the Proxy Server recited at page 13, lines 28-32 of the original specification is a component used by the locator server to provide the connection between the Requesting Device 30 and Private Server 14.

(Ganger Dec. ¶ 14.)

None of Citrix's arguments in support of its proposed construction of "intermediary between" are persuasive. Judge Aldrich concluded that no construction is required for this term, and denied Citrix's motion for reconsideration. Defendants' reliance on the patent itself for support of its new proposed construction is nothing more than another motion for reconsideration. And as this Court has previously ruled, "[i]t is not the function of a motion to reconsider to renew arguments already considered and rejected by a court, or to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue. . . . Rule 59(e) is not designed to give an unhappy litigant an opportunity to relitigate matters already decided."

*Flexsys Am. LP v. Kuhmo Tire U.S.A., Inc.*, 726 F. Supp. 2d 778, 787 (N.D. Ohio 2010) (internal quotation marks and citations omitted).

With respect to defendants' reliance on the reexamination, the Court finds that record does not clearly and unambiguously limit the scope of the '479 patent to a direct connection or exclude a request for information from the request for communication.

For these reasons, the Court rejects Citrix's proposed construction, which inappropriately narrows the claim term, and concludes that there is no basis upon which to disturb the prior construction of "intermediary between." Accordingly, the Court accepts Communique's argument and concludes that no construction of "intermediary between" is required.[17]

### 4. "determining a then current location of the personal computer"

Citrix proposes that the appropriate construction for this term is: "searching a directory to obtain the current dynamic IP address of the personal computer." (Def. CC Br. at 7844.) Communique objects, arguing that Citrix previously proposed an almost identical construction,[18] which Judge Aldrich rejected and instead

---

[17] Citrix contends that the Federal Circuit's decision in *02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co. Ltd.*, 521 F.3d 1351 (Fed. Cir. 2008) does not permit the Court to conclude that no construction of a claim term is required. But this is not a correct reading of *02 Micro*. In that case, the Federal Circuit concluded that the district court erred not because it concluded that "only if" should be assigned its plain and ordinary meaning, but because that construction failed to resolve the parties' dispute regarding scope of the claim. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2011) (citing *02 Micro*, 521 F.3d at 1360-61). In *Finjan*, the Federal Circuit concluded that the district court did not err in giving the term its plain and ordinary meaning because, in doing so, the district court rejected defendant's proposed construction and resolved the parties' quarrel regarding claim scope.

[18] "In response to the claimed request from the remote computer, the location facility searches the dynamic directory to obtain the current dynamic IP address of the personal computer and uses that current IP address to create that requested communication session between the remote computer and personal computer." (Doc. No. 39 at 574.)

construed the claim to mean: "the one or more communication sessions are created by the location facility by determining a current address or communication session for communicating with the personal computer."[19] (First CC Order at 1645-46.)

Citrix acknowledges that Judge Aldrich rejected the language "dynamic directory" from its first proposed construction because, while claims must be construed consistently with the specification, it is improper to import limitations from the specification into the claim.[20] But Citrix contends that Judge Aldrich's rationale does not apply now because Citrix's new proposed construction does not include the word "dynamic." (Def. Reb. Br. at 9063.) Citrix is wrong, and merely resurrects a failed argument for which Citrix attempts to seek reconsideration. The specification language that Citrix claims supports the limitation of a directory lookup[21] speaks of a "directory," not a "dynamic directory." Whether a "directory" or a "dynamic directory," Citrix again improperly attempts to limit claim scope by importing language from the specification into the claim. Citrix makes the same arguments before this Court as before Judge Aldrich, and does not even contend that the reexamination record supports the "directory lookup" limitation.

With respect to the "dynamic IP address" limitation, Citrix maintains that this limitation is warranted because statements by Communique's expert during

---

[19] In its motion for reconsideration, Citrix specifically requested that Judge Aldrich remove "communication session" from it construction of "then current location," but Citrix's motion was denied. (Memorandum and Order Denying Citrix's Motion for Reconsideration at 2989-90.)

[20] "Citrix improperly tries to read 'dynamic directory' into the claim. This would violate the principle of patent law that claims should be read in light of the specification, but that features should not be imported from the specification into the claims. *SciMed Life Sys. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340-41 (Fed. Cir. 2001). Therefore, the court rejects Citrix's proposed construction . . .." (First CC Order at 1645-46.)

reexamination "specifically defined the 'then current location' to require that the personal computer have a dynamic IP address[, and Communique] distinguished the '479 patent from prior art by arguing the prior art does not require dynamic IP addresses, effecting an unequivocal disclaimer." (Def. CC Br. at 7845 (citing Second Ganger Dec. ¶¶ 12, 29, and 44).)

But the reexamination record does not support defendants' argument that Communique defined "then current location" by the IP address of the personal computer. In paragraph 12 of Ganger's second declaration, he states that "the words, 'then current,' are used several times in some independent claims in discussing the personal computer's dynamic IP address *and location[,]*" indicating that the current location of the personal computer is not limited to an IP address. (Second Ganger Dec. ¶ 12 (emphasis added).) Citing the specification, Ganger further points out that "then current" means more than the IP address of the personal computer: ". . . 'to address possible changes to the private server's [IP] protocol address *or its communication session* with the second computer (the location facility)' '479 Patent at 6:58-66." (Second Ganger Dec. ¶ 14 (emphasis added, underlining in original).)

Nor does the reexamination record support defendants' argument that Communique limited the scope of "then current location" of the personal computer to a dynamic IP address when it distinguished the '479 patent from prior art during the reexamination. In distinguishing ILS and NextMeeting from the '479 patent, Ganger points out that this prior art "cannot create a communication channel in the case of a

---

[21] (Def. CC Br. at 7837 (citing the '479 patent Col. 6:42-46) and 7845 (citing the '479 patent Col: 7:54-57).)

personal computer with a publicly un-addressable dynamic LAN IP address." (Second Ganger Dec. ¶ 29.) With respect to NAT P2P, Ganger states the "NAT P2P references are silent on dynamic IP addresses, provide no mechanisms for coping with the issues created by dynamic IP addresses, and were created under the assumption that IP addresses would not change." (Second Ganger Dec. ¶ 44.) Ganger distinguishes the '479 patent from prior art with the above-described limitations as follows: "One of ordinary skill in the art would not view [the requirement that the location facility determine the "then current location of the personal computer"] as being satisfied by a system that cannot accommodate changes in the dynamic IP address. Rather, one of ordinary skill in the art would understand [this language] to require that the location facility be able to determine a 'then current' location for the personal computer even if that dynamic IP address changes." (Second Ganger Dec. ¶ 12.) By distinguishing the narrow capability of prior art from the broader capabilities of the '479 patent to accommodate dynamic IP addresses, Ganger does not equate the personal computer's location with the IP address.

The reexamination record does not support a conclusion that Communique clearly and unambiguously defined "then current location" to mean the personal computer's IP address or limited "then current location" to an IP address when distinguishing the '479 patent from prior art. In fact, the reexamination record supports the original construction that "then current location" means a current address or communication session.

Accordingly, the Court finds no basis in the reexamination record to disturb the prior construction of the term, and rejects defendants' proposed construction. The Court therefore construes the term "determining the then current location of the

personal computer" to mean: "determining a current address or communication session for communicating with the personal computer."

### 5. "creating a communication channel between the remote computer and personal computer"

Defendants propose the following construction for the term, and divide the construction into four portions for purposes of discussion:

> Making or bringing into existence a [1] direct connection (i.e., without an intervening locator server) from the remote computer to the personal computer [2] using a directory lookup of the personal computer's location. [3] The connection is created by the locator server, not by the remote and personal computers themselves, and [4] the locator server assisting some other component that creates the communication channel is not the same as the locator server creating the communication channel.

(Def. CC Br. at 7834-35.)

The Court has already rejected defendants' attempts to limit the scope of claim 24 to a direct connection and directory lookup, which comprise portions 1 and 2 of defendants' proposed construction, and for the same reasons, rejects defendants' attempt to again insert those limitations into this term.

Portions 3 and 4 of defendants' proposed construction deal with creation of the communication channel. Communique and Citrix agree that creating means "making or bringing into existence," and Communique maintains that there is no further construction necessary for the balance of the disputed claim term.

But Citrix contends that portions 3 and 4 of its proposed construction are necessary to make clear the roles of the location facility, locator server, remote and personal computers, and other components, in creating the communication channel as defined and limited by Communique in distinguishing prior art during reexamination.

41

Specifically, Citrix argues that Communique unequivocally stated during reexamination that the claims of the '470 patent require that the location facility itself must create the communication channel, and it is not sufficient that the location facility be used by, assist, facilitate, or enable other components to create the communication channel. (Def. CC Brief at 7839-40 (citing Second Ganger Dec. ¶¶ 6, 7, 8, 23, 24).)

With this Communique entirely agrees, but distinguishes between the location facility being *used by* another component to create the communication channel, and the location facility *using* other components to create the communication channel. (Markman Tr. at 10859-61; Pltf. Reb. Br. at 9140 (citing Doc. No. 290-4 [Record of Oral Hearing Before the Patent Trial and Appeal Board] at 9205, lines 11-20).)

The Court adopts the parties' agreed construction of "creating" to mean "making or bringing into existence." With respect to the balance of the term, the plain language of claim 24, the reexamination record, and the Federal Circuit's definition of location facility, all provide that it is the location facility, *not the locator server* as stated in portions 3 and 4 of defendants' proposed construction, that creates the communication channel. There is no support in the claim itself, the reexamination record, or the precedent of the Federal Circuit to support a construction that the locator server creates the communication channel. The Court agrees with Communique that no construction is required for the balance of the claim.

Accordingly, the Court construes "creating a communication channel between the remote computer and personal computer" to mean: "making or bringing into existence a communication channel between the remote computer and the personal computer."

**IT IS SO ORDERED**.

Dated: June 12, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**