# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| 01 COMMUNIQUE LABORATORY, INC., | ) | CASE NO. 1:06-cv-253 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| | ) | |
| CITRIX SYSTEMS, INC., et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on the combined motion of plaintiff 01 Communique Laboratory, Inc. ("plaintiff" or "01" or "Communique") for judgment as a matter of law and for a new trial (Doc. No. 580 ["Mot."]). Defendants Citrix Systems, Inc. and Citrix Online, LLC (collectively "defendants" or "Citrix") opposed the motion (Doc. No. 586 ["Opp'n"]), to which 01 replied (Doc. No. 589 ["Reply"]).

For the reasons that follow, the motion is denied.

## I. BACKGROUND

The factual and procedural background of this case has been extensively detailed in the Court's claims construction and summary judgment opinions. (*See* Doc. Nos. 343 ["Clm. Const. MOO"] and 471 ["SJ MOO"], respectively.) For purposes of context, a brief background summary is provided now, with greater detail provided later in this memorandum opinion as relevant to the Court's analysis.

In this patent infringement action, plaintiff alleges that Citrix's product, GoToMyPC, infringes independent claim 24, and dependent claim 45, of 01's U.S. Patent No. 6,928,479 (the "'479 patent"). The claimed invention allows individuals to remotely access a personal computer from any device with an internet connection. The primary infringement issue in this case revolves around the manner in which that remote access occurs.

The meaning of certain terms in claims 24 and 45 of the '479 patent are disputed by the parties. Therefore, the Court was required to construe the disputed terms before plaintiff's infringement allegations could be addressed. After briefing and oral argument, the Court issued an opinion construing the disputed claim terms. (*See* Clm. Const. MOO.)

Thereafter, multiple summary judgment motions were filed. Among other issues, 01 moved for judgment on its direct infringement claim, and Citrix moved for judgment on plaintiff's claims for willful infringement and induced infringement. (*See* SJ MOO at 19086-87.[1]) The parties also filed cross motions for summary judgment as to whether the asserted claims are patent eligible under 35 U.S.C. § 101. (*Id.*)  In ruling on the summary judgment motions, the Court: (1) granted 01's motion for summary judgment that the asserted claims of the '479 patent are eligible under § 101 and denied Citrix's motion that the claims are ineligible under § 101; (2) denied 01's motion for summary judgment as to direct infringement of the asserted claims and for exclusion of all evidence of prior art; (3) granted Citrix's motion for summary judgment on 01's claim for induced infringement; and (4)denied Citrix's motion for

---

[1] All references to page numbers are to the page identification numbers generated by the Court's electronic filing system.

2

summary judgment on plaintiff's claim for willful infringement and injunctive relief. (*Id.* at 19141.)

The jury trial in this case commenced on January 11, 2016. During the trial, both 01 and Citirx moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). (Doc. Nos. 551 and 549, respectively; Doc. No. 552 (Transcript January 15, 2016 ["1/15/16 Tr."]) at 38062-38115). At the close of evidence in the case, but before the case was submitted to the jury, both sides reasserted their Rule 50(a) motions and the Court deferred a ruling. (*Id.* at 38223.)

On January 19, 2016, the jury rendered a split verdict. (Doc. No. 570 ["Verdict"].) First, the jury found in favor of Citrix that GoToMyPC did not infringe claims 24 and 45 of the '479 patent. (*Id.* at 41191.) Next, the jury found in favor of 01 that neither claim 24 nor 45 of the '479 patent are invalid. (*Id.* at 41192-93.)

When the jury was excused, neither side orally renewed their Rule 50(a) motions. (*See* Doc. No. 569 (Transcript January 19, 2016 ["1/19/16 Tr."]) at 41189.) After the Judgment Entry was filed (Doc. No. 576), 01 filed the present combined motion pursuant to Rules 50 and Rule 59 of the Federal Rules of Civil Procedure. Citrix did not file a post-trial motion. The law of the Sixth Circuit, rather than the Federal Circuit, applies to the Court's analysis of 01's Rule 50 and Rule 59 motion. *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1331 (Fed. Cir. 2010) (citation omitted); *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 485 F. Supp. 2d 805, 810 n.2 (E.D. Mich. 2007) ("Because Rule 50 and a motion for judgment as a matter of law raises a procedural issue that is not unique to patent law, the Court of Appeals for the Federal Circuit applies the law of the 'regional circuit in which the appeal from the district court would usually lie.'") (quoting *Summit Tech. Inc. v. Nidek Co.,* 363 F.3d 1219, 1223 (Fed. Cir. 2004)).

3

## II. 01's RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

**A. Fed. R. Civ. P. 50**

Rule 50(b) provides that:

\*\*\*

**(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

> **(1)** allow judgment on the verdict, if the jury returned a verdict;
> **(2)** order a new trial; or
> **(3)** direct the entry of judgment as a matter of law.

\*\*\*

"The inquiry for resolving a motion for judgment as a matter of law pursuant to Rule 50 is the same as the inquiry for resolving a motion for summary judgment pursuant to Rule 56." *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 794 (6th Cir. 2004), *aff'd sub nom. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). The Court must "review all of the evidence in the record in the light most favorable to the nonmoving party and determine whether there was a genuine issue of material fact for the jury." *Id.* (citing *Gray v. Toshiba Am. Consumer Prods., Inc.,* 263 F.3d 595, 598 (6th Cir. 2001)); *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 414 (6th Cir. 2012), *aff'd,* 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014) ("A renewed motion for a judgment as a matter of law following an adverse jury verdict 'may only be granted if, when

4

viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences . . . reasonable minds could come to but one conclusion in favor of the moving party.'") (quoting *Barnes v. City of Cincinnati,* 401 F.3d 729, 736 (6th Cir. 2005), *cert. denied,* 546 U.S. 1003, 126 S. Ct. 624, 163 L. Ed. 2d 506 (2005)).

It is only appropriate to grant a renewed motion for judgment as a matter of law where the Court finds that there is no "legally sufficient evidentiary basis" for a reasonable jury to find for the prevailing party on that issue. *White*, 364 F.3d at 794; *Static Control Components*, 697 F.3d at 414. In making this determination, all reasonable inferences must be drawn in favor of the prevailing party. *White*, 364 F.3d at 794 (citing *Reeves*, 530 U.S. at 133). The Court may not make credibility determinations or weigh the evidence, and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id*.; *Static Control Components*, 697 F.3d at 414 ("We will not substitute our interpretation of the evidence for the jury's, even if we would have reached a different conclusion.") (citing *Barnes,* 401 F.3d at 738).

**B. Discussion**

In its post-trial motion, 01 seeks judgment as a matter of law with respect to its claim that GoToMyPC infringes claims 24 and 45 of the '479 patent. A party must move for judgment as a matter of law on an issue at the close of all the evidence in order to preserve the right to renew its motion on that issue after the jury returns its verdict. *Am. & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 160 (6th Cir. 1997) (citation omitted); *Carter v. Ricumstrict*, 637 F. App'x 917, 919 (6th Cir. 2016), *cert. denied,* 137 S. Ct. 340, 196 L. Ed. 2d 267 (2016) (citing, among authority, *Am. & Foreign Ins. Co*., 106 F.3d at 160).

As a threshold matter, Citrix argues that 01's post-trial motion must be denied because 01 did not seek judgment as a matter of law for infringement under Rule 50(a) and, therefore, 01 waived and forfeited its right to now seek judgment as to infringement after the jury returned its verdict. (Opp'n at 41433-34.)  01 contends that it preserved its right to seek post-trial judgment on the issue of infringement by incorporating its motion for summary judgment and motions in limine into its Rule 50 arguments. (Reply at 41481-84.)

01 incorporated its summary judgment motion into the oral argument on its Rule 50 motion regarding invalidity as follows:

> And it's also clear that the reason that [Citrix's expert] has to take this position as we pointed out in our motion for summary judgment, which I incorporate by reference, is that Dr. Foster[2] relied on a claim construction different from that offered by the Court to reach his invalidity conclusions. And I believe even the defendant realizes you can't assert an invalidity ground based on claim construction language that the Court has rejected. So we would argue that the invalidity of the matter should not go to the jury.

(1/15/16 Tr. at 38087 (footnote added).)  01 also incorporated former motions by reference at the close of oral argument on its Rule 50 motion as to invalidity: "Once again, Your Honor, we incorporate our motions for summary judgment and motions in limine into this argument." (*Id*. at 38096.)

01's generic incorporation by reference "*once again*" of its summary judgment and in limine motions "*into this argument*," considered in context, appears to refer to its written and oral Rule 50 arguments regarding invalidity, not infringement. Plaintiff's opposition to Citrix's Rule 50(a) motion for judgment on infringement supports and confirms this conclusion. In opposing Citrix's motion for judgment as a matter of law on infringement at the close of

---

[2] Citrix's expert, Dr. Ian Foster ("Foster").

6

evidence, 01 argued that it offered evidence sufficient for a reasonable jury to find for 01 on that issue. (*See* Doc. No. 567 at 41148-49; *id*. at 41153 ("[J]udgment as a matter of law is only appropriate if there is no conflicting evidence, which is not the case here."); 1/15/16 Tr. at 38072-83.) 01's opposition to Citrix's Rule 50(a) motion is inconsistent with its current post-verdict argument that it sought judgment as a matter of law on infringement, as well as invalidity, at the close of evidence. *See Medisim Ltd. v. BestMed, LLC*, 758 F.3d 1352, 1357 (Fed. Cir. 2014) ("The statement that BestMed now relies on as evidence of a motion for JMOL actually indicates the opposite—BestMed's counsel stated that anticipation was 'definitely something for the jury.' … Further, BestMed's counsel made this statement in opposition to Medisim's motion for JMOL under Rule 50(a)[.]") (internal record citation omitted).

Moreover, 01's generic incorporation by reference fails to satisfy the specificity requirement of Rule 50(a)(2) as to infringement. Rule 50(a)(2) requires that a motion for judgment as a matter of law "specify the judgment sought and the law and facts that entitle the movant to the judgment." 01's written Rule 50 motion (Doc. No. 551) and Rule 50 argument during trial (1/15/16 Tr. at 38086-38115) addressed invalidity with great detail and specificity. However, 01 did not even mention that it sought judgment as a matter of law on infringement in its written or oral Rule 50(a) motions, or provide any specificity regarding the law and facts supporting such a judgment. "Even where a party has made some reference to an issue in a Rule 50(a) motion that it later invokes as the basis for its renewed motion under Rule 50(b), the issue is not preserved if it was not raised in a sufficiently substantial way in the earlier motion." *CFE Racing Prod., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 583 (6th Cir. 2015) (citing *Libbey–Owens–Ford Co. v. Ins. Co. of N. Am.,* 9 F.3d 422, 425-27 (6th Cir. 1993)).

Rule 50(a)(2) does not define how specific the grounds for judgment as a matter of law must be. *Kusens v. Pascal Co.*, 448 F.3d 349, 361 (6th Cir. 2006) (citation omitted). But the Sixth Circuit has cautioned against reviewing a post-verdict motion too narrowly, finding instead that the motion should be reviewed in light of Rule 50(a)'s purpose—"providing notice to the court an opposing counsel of any deficiencies in the opposing party's case prior to sending it to the jury[.]" *Id.* (citation omitted); *Chain v. Tropodyne Corp.*, 238 F.3d 421, at *3 (6th Cir. 2000) (Table decision) ("Th[e] purposes [of Rule 50(a)] are to provide the opposing party an opportunity to cure any defects in proof and to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant.") (citing *Gutzwiller v. Fenik*, 860 F.2d 1317, 1330 (6th Cir. 1988) (further citation omitted)). Where Rule 50(a)'s purpose is met, "courts usually take a liberal view of what constitutes a pre-verdict motion sufficient to support a post-verdict motion." *Kusens*, 448 F.3d at 361 (citation omitted).

Even taking a liberal view of 01's Rule 50(a) motion, the rule's purpose as to infringement is not met. First, 01's generic incorporation by reference of motions in limine and summary judgment did nothing to put Citrix—not to mention the Court—on notice of any deficiencies in Citrix's case with respect to its defense of 01's infringement claims so that those deficiencies could be corrected prior to submission to the jury. Neither Citrix nor the Court are required to speculate as to which specific facts and legal arguments in 01's summary judgment and in limine motions were to be considered with respect to 01's Rule 50(a) motion at the close of evidence. *See Confederated Tribes of Siletz Indians of Oregon v. Weyerhaeuser Co.*, No. CV 00-1693-PA, 2003 WL 24901381, at *1 (D. Or. July 5, 2003) (court declined to speculate as to

8

issues and arguments not specifically set forth in renewed Rule 50 motion where party incorporated by reference into renewed motion all arguments previously made in motions for summary judgment, in limine, etc.).

Second, 01's detailed Rule 50(a) arguments on the issue of validity were insufficient to accomplish the purpose of Rule 50(a) as to infringement because the elements of proof for validity and infringement are entirely different. *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1107–08 (Fed. Cir. 2003) (pre-verdict motion for anticipation will not support post-verdict motion for obviousness because anticipation and obviousness are legally distinct challenges to a patent's validity that require different elements of proof) (citation omitted); *Laymon v. Lobby House, Inc.*, 613 F. Supp. 2d 504, 512 (D. Del. 2009) (a general pre-verdict motion for judgment as a matter of law is insufficient to provide notice when the issues involve different elements of proof) (citation omitted).

For all of the above-stated reasons, the Court finds that 01's failure to assert a Rule 50(a) motion on infringement precludes it from now asserting such a post-verdict motion. Accordingly, 01's Rule 50(b) motion must be denied. The denial of 01's Rule 50(b) motion is somewhat academic, however, because 01 has alternatively moved for a new trial under Rule 59, as permitted by Rule 50(b). Moreover, even if 01 had not waived its Rule 50 motion as to infringement, the motion would be denied. The same evidence that supports the Court's conclusion that 01's Rule 59 motion for a new trial should be denied also supports the conclusion that, when the evidence is viewed in a light most favorable to Citrix, there is a "legally sufficient evidentiary basis" for a reasonable jury to find for Citrix on the issue of infringement.

### III. 01's MOTION FOR A NEW TRIAL

**A. Fed. R. Civ. P. 59(a)**

Rule 59(a) provides that:

**(a) In General.**

> **(1)** *Grounds for New Trial.* The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:
>
>> **(A)** after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or
>>
>> **(B)** after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.
>
> \*\*\*

"[A] new trial is appropriate when the jury reaches a 'seriously erroneous result as evidenced by (1) the verdict being against the [clear] weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias.'" *Static Control Components*, 697 F.3d at 414 (quoting *Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398, 405 (6th Cir. 2006) (internal quotation marks, alterations, and citations omitted)). 01 contends that it is entitled to a new trial because the non-infringement verdict was against the weight of the evidence and certain aspects of the trial were prejudicial.

**B**. **Jury's verdict was not against the weight of the evidence**

### 1. Standard of Review

The Court should not overturn the jury's verdict as against the weight of the evidence "unless the verdict was unreasonable." *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 186 F.R.D. 453, 455 (N.D. Ohio 1999) (quoting *Holmes v. City of Massillon,* 78 F.3d 1041, 1047–48 (6th Cir. 1996)). "Thus, if a reasonable juror could reach the challenged verdict, a new trial is improper." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 821 (6th Cir. 2000) (citing *Holmes*, 78 F.3d at 1048). "[C]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Id.* 201 F.3d at 821 (internal quotation marks omitted) (quoting *Duncan v. Duncan,* 377 F.2d 49, 52 (6th Cir. 1967)); *Decker v. GE Healthcare Inc.*, 770 F.3d 378, 395 (6th Cir. 2014) (same) (citing *Owens-Corning* and *Holmes*).

### 2. Literal infringement

The issue before the Court is whether a reasonable jury, based on the evidence at trial, could have reached the verdict that GoToMyPC did not infringe claims 24 and 45 of the '479 patent. Direct infringement of a patent occurs when one, "without authority makes, uses, offers to sell, or sells any patented invention" within the United States. 35 U.S.C. § 271(a). "Direct infringement requires a party to perform each and every step or element of a claimed method or product." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378-79 (Fed. Cir. 2007), *overruled on other grounds by Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301

11

(Fed. Cir. 2012) (citations omitted.) To establish literal infringement at trial,[3] 01 must prove that *each* limitation of claims 24 and 45 "reads on" or is found in GoToMyPC. *See Allen Eng'g Corp. v. Bartell Ind., Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002) (citations omitted); *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1330 (Fed. Cir. 2013) (citation omitted).

01's argument that the jury's verdict of non-infringement is against the weight of the evidence[4] is two-pronged: (1) Citrix's non-infringement argument at trial was premised upon a construction of the claim term "create" that was rejected by the Court;[5] and (2) under the Court's construction of "create," reasonable minds could not disagree that GoToMyPC infringed claims 24 and 45 of '479 patent. (Mot. at 41249 and 41251-54.) Citrix opposes 01's arguments on both the merits and on the grounds that 01 waived this basis for a new trial by failing to lodge appropriate objections during trial. (Opp'n at 41444.) For the purpose of this analysis, the Court assumes, without finding, that 01 did not waive this argument for a new trial.

---

[3] The issue of infringement was also previously the subject of summary judgment. On summary judgment, 01 argued that Citrix's GoToMyPC literally infringed the following limitations of claim 24: computer program product; server computer having a static IP address and providing access to a personal computer from a remote computer; location facility and server computer; intermediary between; determining the then current location of the personal computer; and creating a communication channel and creating one or more communication sessions between a personal computer and a remote computer. (SJ MOO at 19126.) Without waiving its non-infringement arguments with respect to other limitations in claim 24, Citrix focused its opposition to 01's summary judgment motion on two specific limitations: (1) "creating a communication channel"; and (2) "determining the then current location of the personal computer." (*Id*. at 19172.)

The Court concluded that there was a genuine dispute of material fact with respect to the limitation of claim 24—"determining the then current location of the personal computer." (*Id*. at 19132.) A fact dispute regarding a single limitation of claim 24 precluded summary judgment on 01's infringement claim. Thus the Court denied 01's motion for summary judgment of direct infringement without addressing the parties' arguments regarding the other limitations of claim 24. (*Id*. at 19132.)

[4] 01's argument that the verdict is against the weight of the evidence is the same as the argument in support of its motion for judgment as a matter of law. (Mot. at 41268.)

[5] This issue was also the subject of a motion in limine by 01. In overruling 01's motion, the Court stated that the parties' experts could testify regarding what the location facility does and does not do, but invited 01 to object at trial if there was some specific question or testimony regarding the meaning of the term "creating" that 01 believed was inappropriate. (Doc. No. 496 (Transcript December 29, 2015 ["12/29/15 Tr."]) at 25816-27.)

### 3. Court's claim construction of "creating"

01's argument for a new trial focuses on the claim term "creating" in claim 24(b)(ii)[6] of the '479 patent, which describes one function of the "location facility"—"creating a communication channel between the remote compute and personal computer." During claim construction, the meaning of "creating" was not disputed by the parties. They agreed that "creating" means "making or bringing into existence," and the Court adopted the parties agreed construction. (Clm. Const. MOO at 11485.) Contrary to 01's contention, Citrix did not offer a construction of "creating" during claim construction that was rejected by the Court.

---

[6] The text of claim 24 is set forth in its entirety, below. The disputed claim terms relevant to this analysis are shown in bold underlined typeface.

> 24.    A computer program product for use on a server computer linked to the Internet and having a static IP address, for providing access to a personal computer from a remote computer, the personal computer being linked to the Internet, its location on the Internet being defined by either (i) a dynamic public IP address (publicly addressable), or (ii) a dynamic LAN IP address (publicly un-addressable), the computer program product comprising:
>
> (a) a computer usable medium;
>
> (b) computer readable program code recorded or storable in the computer useable medium, the computer readable program code defining a server computer program on the server computer wherein:
>
> (i) the server computer program is operable to enable a connection between the remote computer and the server computer; and
>
> (ii) the server computer program includes a location facility and is responsive to a request from the remote computer to communicate with the personal computer to act as an intermediary between the personal computer and the remote computer by creating one or more communication sessions there between, said one or more communication sessions being created by the location facility, in response to receipt of the request for communication with the personal computer from the remote computer, by determining a then current location of the personal computer and **creating a communication channel between the remote computer and the personal computer**, the location facility being operable to create such communication channel whether the personal computer is linked to the Internet directly (with a publicly addressable) dynamic IP address or indirectly via an Internet gateway/proxy (with a publicly un-addressable dynamic LAN IP address).

(Clm. Const. MOO at 11455 (footnotes  and other emphasis omitted).)

With respect to the balance of the phrase—"a communication channel between the remote computer and personal computer"—Citrix advanced a construction requiring that the connection between the remote and personal computer be created by the *locator server*, not by the remote and personal computer, and not by the *locator server* assisting other components to create the communication channel. (Clm. Const. MOO at 11484.) Citrix supported this construction by arguing that during reexamination[7] of the '479 patent, 01's expert, Dr. Gregory Ganger ("Ganger"), distinguished prior art on the grounds that the '479 patent requires that the location facility itself must create the communication channel, and that it was not sufficient to satisfy the requirements of the '479 patent if the location facility was used by, assisted, facilitated, or enabled other components to create the communication channel.[8] (Clm. Const. MOO at 11484-85.)

The Court rejected this language, however, because "the plain language of claim 24, the reexamination record, and the Federal Circuit's definition of location facility,[9] all provide that it

---

[7] The '479 patent was the subject of an *inter partes* reexamination requested by Citrix. (*See* Clm. Const. MOO at 11446.)

[8] Plaintiff agrees with Citrix regarding Ganger's statement during reexamination regarding the function of the location facility, distinguishing between the location facility being *used by* another component to create the communication channel, and the location facility *using* other components to create the communication channel. (Clm. Const. MOO at 11485.)

[9] The Federal Circuit in *Communique Laboratory, Inc. v. LogMeIn, Inc.,* 687 F.3d 1292, 1299-1300 (Fed. Cir. 2012) construed the claim term "location facility" in the '479 patent, and the Court concluded that it was bound by the Federal Circuit's construction of this term. (Clm. Const. MOO at 11465-71.) Thus, the Court construed "location facility" to mean:

> Software on a locator server computer that: (1) receives a request for communication with the personal computer from a remote computer; (2) determines the then current location of the personal computer; (3) creates a communication channel between the remote computer and personal computer; and (4) creates one or more communication sessions between the remote computer and the personal computer. The locator server may comprise one or more computers, and the location facility may be distributed among one or more locator server computers.

(*Id*. at 11471, quoting *LogMeIn*, 687 F.3d at 1299-1300.)

14

is the location facility, *not the locator server* as stated in . . . defendants' proposed construction, that creates the communication channel. There is no support in the claim itself, the reexamination record, or the precedent of the Federal Circuit to support a construction that the locator server creates the communication channel." (*Id*. at 11485 (emphasis in original).) Upon rejecting Citrix's proposed construction, the Court agreed with 01 that no construction was required. This means that the words are given their ordinary and customary meaning to a person of ordinary skill in the art at the time of the invention. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).

Thus, the Court construed the phrase "'creating a communication channel between the remote computer and personal computer' to mean: 'making or bringing into existence a communication channel between the remote computer and the personal computer.'" (Clm. Const. MOO at 11485-86.) Contrary to 01's contention, the Court's construction did not reject Citrix's proposed construction because of the proposed manner by which the location facility achieved its "create" function, and drew no distinction between the location facility being "used by" other components, and "using" other components, to create the communication channel. (Mot. at 41254; Clm. Const. MOO at 11484-85.)

**4. Citrix did not utilize a rejected definition of "create" at trial**

In support of its contention that Citrix utilized an improper definition of "creating" when arguing at trial that GoToMyPC does not infringe the '479 patent, 01 cites the cross examination of Ganger and the direct examination of Foster. 01's argument, however, is not supported by the record. The record reflects that the testimony cited by 01 does not address the definition of "creating," but what the '479 patent requires of the location facility regarding creation of a

communication channel, and how the communication channel is created in the accused product, GoToMyPC.

### *Dr. Ganger's cross examination*

As an example of Citrix's purportedly improper use of "create" in its non-infringement case, 01 points to Citrix's cross examination of Ganger regarding paragraph 8[10] of his second declaration to the patent office during reexamination. During this exchange, 01 argues that Citrix suggested the term "create" had "special meaning" rather than the Court's construction of the term. (Mot. at 41256-57.) The relevant portion of the transcript follows.

> [Mr. Cordell.] It's paragraph 8. It's page -- I don't know what page. Page 3.
> So just to make this clear to everybody, what you're saying there is that in applying some references, what I mean by references, those were prior art references. Right?
> [Dr. Ganger.] Well, at least potentially prior art, but yeah.
>           ***
> Q. And you say in applying some references to the '479 patent claims, the '479 patent claims are the ones we are talking about in this case. Right?
> A. Yes.
>           ***
> Q. And you're taking the patent examiner to task a little bit because you say, "You know, the [Action Closing Prosecution ("ACP")] essentially equates the word 'creates' with uses, enables, or facilitates." Right?
> A. Well, you've read what I said. I don't know if I would say "take" to "task."

---

[10]

> 8. In applying some references to the '479 Patent claims, the ACP essentially equates the word, "creates", with "uses", "enables", or "facilitates". One of ordinary skill in the art would not view the "create" requirements of the '479 Patent claims to be satisfied if the location facility is only "used" by some other component that itself creates the communication channel, as asserted in the ACP with respect to some references. One of ordinary skill in the art would also not view these "create" requirements to be satisfied if the location facility only "enables" or "facilitates" some other component that creates the communication channel, as asserted in the ACP with respect to some references. These words ("uses", "enables", "facilitates") would have different meanings to one of ordinary skill in the art than "create". Assisting some other component that creates the communication channel is not the same as creating the communication channel - the '479 Patent claims require the location facility to do the latter.

(Doc. No. 535-1 at 35866 (Dr. Ganger's second declaration before the patent office was exhibit 1067 at trial (Doc. No. 541 (Transcript January 13, 2016 ["1/13/16 Tr."]) at 36564), as well as an exhibit to a motion in limine brought by 01 (Doc. No. 523)).)

Q. Well, you're pointing out that the patent examiner in your view had equated the word "create" with these other verbs, uses, enables, or facilitates. Right?

A. In particular, I was concerned because they were using -- the systems were using weak forms of those fairly broad words.

*** 

Q. And then you say, "You know, patent examiner, you're wrong because one of ordinary skill in the art would not view the, quote, create requirements of the '479 patent claims to be satisfied if the location facility is only used by some other component that itself creates the communication channel as asserted in the ACP with respect to some references." That's what you wrote. Right?

A. I believe you read that correctly.

*** 

Q. . . . But the reality is, that one of ordinary skill in the art, you're telling the patent office, "You got this wrong because one of ordinary skill in the art would not view the create requirements of the '479 patent claims." You're talking about the location facility here, correct?

A. Yes.

Q. *And you're saying that verb create has special meaning* to engineers and people that work in this particular technical area. Right[?]

A. No, I don't think I am.

Q. Well, you say to one of ordinary skill in the art. Right[?] That's what that means?

A. *Yeah, but I don't think it's because it has special meaning.* I'm pretty sure somewhere else I actually note what it doesn't have special meaning.

Q. Oh, okay. *I didn't mean to suggest that it was something different. But you're making the point to the patent examiner that in your view, your expert view, one of ordinary skill in the art, when they see the word "create" they don't think facilitate or enable or help.* Right?

A. Again, yeah, but you have to put this all into context, right, of what the specific references were doing and what he was saying about those references.

(1/13/16 Tr. at 36485-88 (emphasis added).)

At this point, 01 requested a side bar and counsel for 01 argued that the Court had construed the term "create" and objected to Citrix's suggestion that the term had some other "special meaning." Counsel for Citrix acknowledged that he should have not used the term "special meaning," but only intended to clarify the role of the location facility. (*Id*. at 36489.) The Court agreed that use of the phrase "special meaning" was not appropriate, and directed

counsel for Citrix to rephrase the question. (*Id.* at 36490.[11]) With that, Citrix's cross-examination of Ganger continued with a discussion of whether one of ordinary skill in the art would consider the location facility to satisfy the '479 patent's requirement of creating the communication channel if the location facility is enabling or facilitating other components to create the channel. (*Id.* at 36491-92.[12])

The transcript reflects that Citrix's cross examination of Ganger does not address the definition of "create," but how "location facility" fulfills this function as claimed in the '479 patent—to "make or bring into existence" a communication channel between the remote and personal computers. Indeed, upon direct examination by 01 about the location facility's "create" function in the '479 patent, Ganger specifically used the Court's definition of "create" when

---

[11]

> MR. CORDELL: I shouldn't have said special meaning, but my intention is to characterize the role of the location facility. He said 17 times that – when I asked him whether these entities created the channel, he would say well, the broker directs it. And he kept hedging back to trying to pull something out of what his definition of location facility is would be involved in some way.
> THE COURT: First of all, I think the point that Mr. Shunk makes is well-taken in that it could be a little confusing to say special meaning.
> MR. CORDELL: Yeah, I shouldn't have said special meaning.
> THE COURT: So just rephrase. From that perspective, I agree.
> Secondly, I think this was an issue that we used extensively prior to trial. And Citrix will be permitted to cross-examine Dr. Ganger regarding his clarification of what one of ordinary skill in the art understands the word "create" to mean, and more importantly, if you recall, not to mean. So with that, you may continue.

(1/13/16 Tr. at 36490.)

[12]

> [Mr. Cordell.] Okay.  . . . So let's go back to paragraph 8 of Exhibit 1067. And in the next sentence, you wrote, "One of ordinary skill in the art would also not view these, quote, create requirements, to be satisfied if the location facility only enables or facilitates some other component that creates the communication channel."
> ***
> Q. So engineers that work in this field would not view the create requirements -- the create requirements you're talking about here is the create requirement that the location facility creates the channel. Right?
> [Dr. Ganger.] Yes.

testifying that one of ordinary skill in the art would not say that the location facility was "creating" if it only enabled or facilitated the communication channel:[13]

> [Mr. Shunk.] And you say, "One of ordinary skill in the art would [not] view the create requirements of the '479 patent claims to be satisfied if the location facility is only used by some other component that itself creates the communication channel."
>
> ***
>
> Q. Okay. Now, in the next sentence you give some words that are similar to use. Let's look at some of those. What about enable? How does your argument change, if at all, with regard to enable?
>
> [Dr. Ganger.] Well, enable, like facilitate, is a broad word. If it only -- if -- you can say that it enables, but it only enables by doing something that's not creating. *You wouldn't say is making or bringing into existence.* Then it would not be sufficient.

(*Id*. at 36537-39 (emphasis added).)

With respect to his infringement analysis, Ganger specifically used the Court's construction of "creating" when opining that the location facility[14] in GoToMyPC "creates" the communication channel on both direct examination (Doc. No. 532 (Transcript January 12, 2016 ["1/12/16 Tr."]) at 35757-78) and on cross examination by Citrix (1/13/16 Tr. at 36481-82). Ganger also used the Court's definition of "create" in forming his opinion that GoToMyPC infringed claims 24 and 45 of the '479 patent, in addition to considering GoToMyPC's source code and technical documents, the requirements of the asserted claims of the '479 patent, and how both the claimed invention and accused product create a communication channel between the remote and personal computers. (1/12/16 Tr. at 35676-82.)

---

[13] When Citrix cross examined Ganger regarding the creation of a communication channel between the personal and remote computers in GoToMyPC, Ganger also testified that he understood "create" to mean "to make or bring into existence," as it was construed by the Court, just as he testified upon direct examination by 01. (1/12/16 Tr. at 35757-78, 1/13/16 Tr. at 36481.)

[14] Ganger testified that in GoToMyPC, the software on the broker, comm and poll servers, comprise the "location facility." (1/12/16 Tr. 35733.) Citrix's expert, Foster, disagreed. (1/14/16 Tr. at 37839-40.)

The Court concludes that no "special meaning" of the claim term "creating" was argued or used by Citrix in connection with Citrix's cross examination of Ganger, and that Ganger used the Court's construction of that term in arriving at his opinion that GoToMyPC infringed the asserted claims of the '479 patent.

### Dr. Foster's direct examination

Further in support of its argument that Citrix used an improper construction of "creating" in its non-infringement argument, 01 points to Foster's testimony regarding Ganger's declaration submitted during reexamination. (Mot. at 41251-52 (citing Doc. No. 548 (Transcript January 14, 2016 ["1/14/16 Tr."]) at 37819).) 01 argues that although the Court defined "create" as "making or bringing into existence," Foster "expressly rel[ied] on a definition of 'create' that was limited by statements made during the reexamination by Dr. Ganger[.]" (Mot. at 41251 (underline in original).)

Like Ganger's testimony, however, Foster's testimony does not address the definition of "create," but the required function of the location facility in the '479 patent to "create" a communication channel between the remote and personal computers. Indeed, in testifying about how the communication channel in GoToMyPC is created, and whether that satisfies the asserted claim limitations in the '479 patent, Foster specifically applied the Court's definition of "create."

> [Mr. Cordell]. Okay. Now, let's go back to the location facility. Remember we -- this is what we were looking for in the claims, right?
> [Dr. Foster]. Yes.
> Q. And in order to satisfy the claims, we have to meet the Court's definition. That's your understanding, right?
> A. That's my understanding.
> Q. Okay. And did you look to see whether or not the Citrix accused GoToMyPC system has anything called the location facility -- well, let's just start with this. The location facility we know is part of the server computer program, right?
> A. That is correct.

Q. Did you look to see whether anything in the servers creates a communication channel between the remote computer and the personal computer?

A. I did.

Q. And what did you find?

A. There is nothing there that creates a channel.

Q. And what is it that creates the channels in the GoToMyPC system?

A. It's the, -- as we have seen from looking at the code it's the host and the client.

Q. *And just to make sure, we put an absolute fine point on it, did you use the definition of creating that the court gave us, makes or bringing into existence?*

A. *I did*.

Q. Now, I guess in summary here -- well, just tell us what your opinion is about what system element creates the channels in the GoToMyPC system?

A. Yeah, so, you know, really the key point here is it's -- as we've seen by looking at the appropriate code, it's the host and the client that create a channel. It's indisputable, I think, from themselves out to this comm server.

Q. And does that meet the Court's definition of the location facility?

A. It does not.

Q. Now, Dr. Ganger gave the patent office some of his views about some of these claims, right? At least he gave the patent office his view of what a location facility is, right?

A. He did, yes.

Q. And did you review Dr. Ganger's declarations?

A. I did.

Q. And do you think that what he told the patent office was unclear in any way?

A. No.

Q. Okay. And do you agree with his statement one of ordinary skill in the art would also not view these create requirements to be satisfied if the location facility only enables or facilitates some other component that creates the communication channel?

A. So the question was, do I --

Q. Do you agree with his statement?

A. I do, yes.

Q. And in your view, therefore, is the claim limitation, the server computer creating including a location facility that creates a communication channel between the remote computer and the personal computer satisfied in [GoToMyPC]?

A. No, it is not.

(1/14/16 Tr. at 37817-19 (emphasis added).)

Utilizing the Court's construction of "creating," Foster agreed with Ganger that the '479 patent requires the location facility to create—i.e. make or bring into existence—"a

communication channel between the remote computer and the personal computer," and that this requirement is not met if the location facility only enables or assists the remote and personal computers in creating the communication channel. Like Ganger's testimony regarding the "create" function of the location facility in the '479 patent, Foster's testimony does not redefine "create," but addresses *how* the location facility does, or does not, create the communication channel.

Using the Court's definition of "create," Foster testified, among other things, about the requirements of the '479 patent, GoToMyPC's source code, and how both the claimed invention and accused product create a communication channel between the remote and personal computers in reaching his opinion that GoToMyPC does not contain all of the limitations of claims 24 and 45 of the '479 patent. Thus, Foster opined that GoToMyPC did not infringe the asserted claims. (*Id*. at 37791-819.)

### 5. Analysis

The first prong of 01's argument that the jury's verdict is against the weight of the evidence because Citrix did not use the Court's definition of "create" fails for the reasons discussed above. Experts from both sides, using the Court's definition of "create," presented extensive testimony, including whether GoToMyPC reads on claim 24's limitations in the '479 patent, whether GoToMyPC contains a location facility, whether a location facility in GoToMyPC creates the communication channel between the remote and personal computers, and whether the remote and personal computers in GoToMyPC create the communication channel between them.

Infringement is a question of fact for the jury. To establish literal infringement at trial, 01 was required to prove that each limitation of claims 24 and 45 in the '479 patent "reads on" or is found in GoToMyPC. Among other evidence, the parties' experts expressed different opinions regarding how GoToMyPC creates a communication channel between the remote and personal computers, and whether the manner the communication channel is created "reads on" claims 24 and 45. If the evidence presented at trial by Citrix was believed by the jury, there was more than sufficient evidence from which a reasonable jury could conclude, among other things, that GoToMyPC does not contain a location facility, and/or that the remote and personal computers, not the location facility, creates the communication channel in GoToMyPC. If the jury concluded that  GoToMyPC does not read on even one limitation in claim 24, then  01 failed to establish that GoToMyPC infringes the '479 patent. *Function Media*, 708 F.3d at 1330 ("To prove infringement, the patentee must show that the accused device contains each limitation of the asserted claim[.]") (quoting *Bowers v. Baystate Techs., Inc.,* 320 F.3d 1317, 1334 (Fed. Cir. 2003)).

The Court should not overturn the jury's verdict as against the weight of the evidence "unless the verdict was unreasonable." *Iron Workers Local Union No. 17 Ins. Fund*, 186 F.R.D. at 455 (citations omitted). A verdict is not unreasonable simply because the jury could have drawn different inferences or conclusions from the evidence presented. *Owens-Corning*, 201 F.3d at 821. The jury was persuaded by Citrix's evidence and not persuaded by 01's evidence. Because there was sufficient evidence upon which a reasonable jury could find that GoToMyPC does not infringe claims 24 and 45 of the '479 patent, the Court will not grant a new trial on the basis that the verdict was against the weight of the evidence.

**C. Trial was not Unfairly Prejudicial to 01**

A new trial is warranted if the proceedings were unfair to the moving party in some way, such as if the proceedings were influenced by prejudice or bias. *Holmes*, 78 F.3d at 1046–47; *Kusens*, 448 F.3d at 367 n.13 (citing *Holmes*). That is, there must be a "reasonable probability" that the verdict of the jury was influenced by the alleged prejudice or bias. *See Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998) (quoting *Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980)); *Holmes,* 78 F.3d at 1045–46 ("[A] new trial is warranted when a jury has reached a seriously erroneous result as evidenced by ... the proceedings being influenced by prejudice or bias.") (citations omitted). A substantial error in the admission or rejection of evidence, or the giving of, or refusing to give, a proper jury instruction, establishes prejudice. *The Scotts Co. v. Cent. Garden & Pet Co.*, 256 F. Supp. 2d 734, 752 (S.D. Ohio 2003) (citing *Holmes*, 78 F.3d at 1045-46.)

01 advances three reasons in support of its contention that the trial was fundamentally unfair and prejudicial: (1) Citrix's claim construction argument to the jury was improper and prejudicially misleading; (2) Citrix's "practicing the prior art" defense and presentation of prior art was improper and prejudicially misleading; and (3) the Court's ruling that 01 could not identify Citrix as the requester of the reexamination was prejudicial. (*See* Mot. at 41246.) The Court has already concluded that Citrix did not utilize a claim construction of "create" at trial that was previously rejected by the Court. Therefore, the Court need not address 01's first argument that it was prejudiced by improper claim construction. It was not. (*See* Mot. at 41258-60.)

24

### 1. "Practicing the prior art" defense to literal infringement

01's second prejudice argument is that Citrix used a "well-known defendant's trick" known as the "practicing the prior art" defense to 01's infringement claim. (Mot. at 41261.)

> A "practicing the prior art" defense typically refers to the situation where an accused infringer compares the accused infringing behavior to the prior art in an attempt to prove that its conduct is either noninfringing or the patent is invalid as anticipated because the accused conduct is simply "practicing the prior art."

*Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1337 (Fed. Cir. 2011) (citation omitted).

The Federal Circuit has rejected "practicing the prior art" as a defense to literal infringement.[15] *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002) ("[T]here is no 'practicing the prior art defense' to literal infringement.") (citing *Baxter Healthcare Corp. v. Spectramed, Inc.,* 49 F.3d 1575, 1583 (Fed. Cir. 1995)). "[L]iteral infringement is determined by construing the claims and comparing them to the accused device, not by comparing the accused device to the prior art." *Id.* at 1366 (citing *Baxter*, 49 F.3d at 1583.

---

[15] Similarly, with respect to proving invalidity, the prior art must be compared against the claims of the asserted patent, not the accused product. *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1363–64 (Fed. Cir. 2008) ("In [*Tate*], … we explained that the defense of noninfringement cannot be proved by comparing an accused product to the prior art[.] … Likewise, mere proof that the prior art is identical, in all material respects, to an allegedly infringing product cannot constitute clear and convincing evidence of invalidity. Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference. '[I]t is the presence of the prior art and its relationship to the claim language that matters for invalidity.'") (quoting *Tate* at 1367); *Cordance*, 658 F.3d at 1337 ("In *Tate*, this court explained that accused infringers are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a 'practicing the prior art' defense to literal infringement under the less stringent preponderance of evidence standard. It is the presence of the prior art and its relationship to the claim language [of the patent in suit] that matters for invalidity.") (internal quotation marks and citations omitted) (quoting *Zenith Electrs. Corp.,* 522 F.3d at 1363 (quoting *Tate,* 279 F.3d at 1367)).

This aspect of the "practicing the prior art" defense, however, is not relevant because the jury found the patent valid and Citrix has not filed a post-trial motion taking issue with that verdict. 01 does not take issue with the jury's verdict that the '479 patent is invalid because Citrix cannot be liable for infringement of an invalid patent. *See Commil USA, LLC v. Cisco Sys., Inc.*, 737 F.3d 699, 702 (Fed. Cir. 2013).

*01's argument*

01 contends that Citrix improperly argued throughout the trial that "if the jury found that [GoToMyPC] infringed the 479 patent, then the patent must be invalid, because Citrix was doing no more than what was known in the prior art BuddyHelp and ExpertLive systems." (*See* Mot. at 41261-64.) By intertwining invalidity and infringement, 01 maintains that Citrix prejudicially encouraged the jury "to circumvent an element-by-element analysis of infringement[,]" thus warranting a new trial. (Reply at 41484.)

01 cites three examples in support of this aspect of its motion. First, 01 contends that Citrix improperly used the "practicing prior art defense" in its opening statement[16] as follows:

> [Mr. Cordell.] Because it turns out that there was a lot of prior art put in front of the patent office. And Mr. Shunk made a point of this in his opening statement. He said, you know, a lot of those systems were already put in front of the patent office so don't sit still for too much of this invalidity business.
>
> Well, it turns out one of [the] systems that was put in front of the patent office was BuddyHelp. They put the BuddyHelp system in front of the patent office. It was put in front of the patent office. And the patent office didn't [have all] the information about BuddyHelp, but it had some of the documentation.
>
> And what did the patent office say? The patent office said BuddyHelp is different. And, in particular, the patent office said that one or more communication sessions being created by the location facility in response to receipt of the request for communication with the personal computer from the remote computer is not taught by BuddyHelp. That's patent speak for it is different from BuddyHelp.
>
> We agree with that. We agree with that. We're not here to try to take Mr. Cheung's patent away from him. But they told these things to the patent office

_____

[16] 01 argues that Citrix's opening statement agreeing with the patent examiner that the '479 patent was valid over BuddyHelp shows that Citrix's motivation in presenting prior art evidence was not to advance an invalidity defense, but to improperly prejudice 01 in its infringement case. Citrix's opening statement was the subject of a motion in limine by 01. (*See* Doc. No. 523.) After the parties' argued their positions and the Court examined Citrix's opening statement, the Court concluded that Citrix's prior art reference in opening statement was not made in the context of its non-infringement defense (which is not permissible), but rather in the context of its invalidity argument (which is permissible). (1/13/16 Tr. at 36428-29.) Moreover, the Court specifically instructed the jury regarding permissible and impermissible uses of Citrix's prior art evidence with respect to literal infringement. (1/15/16 Tr. at 38242.)

and they've got to remain true to their word. They told the patent office that systems that create those channels using the end points rather than a central location facility are different. Are different. And that's what we expect them to live up to here today.

(Doc. No 521 (Transcript January 11, 2016 ["1/11/16 Tr."]) at 33932-33.)

01 next points to an exchange between the Court and counsel for Citrix that 01 contends shows Citrix's improper and prejudicial intentions to advance a "practicing the prior art" defense to infringement at trial:

> MR. CORDELL: The fact that [Dr. Ganger] says that a particular set of code and processes within GoToMyPC is covered by the patent, and if I can prove those same processes existed not prior art BuddyHelp system, then the patent is invalid. I don't … understand this practicing of the prior art argument. Our expert did this analysis. He is the one that said, "Look, all the technology they're accusing in GoToMyPC, that existed back in the BuddyHelp system." So they have a problem. They have a fundamental problem.
> And this is not -- I don't know what this practicing of the prior art thing is all about. This is pure fact and law. They say that a particular set of technology is covered by this patent, invalidity and infringement are two sides of the same coin.
> THE COURT: And so you can use it, you're saying, to demonstrate invalidity on the basis of what?
> MR. CORDELL: So, you know, what I said in opening, I meant. I took the jury through the claim and distinguished the claim from what GoToMyPC is doing. If we are wrong on that, and it turns out that this claim covers that technology.
> THE COURT: Okay.
> MR. CORDELL: That technology existed before 1999. And they've got an invalidity problem. But I'll prove it up that way.
> THE COURT: I understand what you're saying, but you're saying that it's based upon prior art.
> MR. CORDELL: Correct.
> THE COURT: So you're saying that Mr. Shunk's argument that you can't have that defense is not true.
> MR. CORDELL: Correct.
> THE COURT: That's exactly the defense you're trying to make.
> MR. CORDELL: *I am arguing that this system does not infringe*. And that's what I told the jury.
> THE COURT: Right. No. I did listen -- yeah, I listened to your opening statement. And you said it doesn't infringe. *But if it's interpreted in such a way that it infringes --*
> MR. CORDELL: *Then the patent is invalid*.

THE COURT: Okay.

MR. CORDELL: So it's not a practicing the prior art defense. It's we think it's different, but if we're wrong, then they've got a date problem.

(1/12/16 Tr. 35820-21 (emphasis added).)

For its third example, 01 points to the testimony of Foster regarding the validity of the '479 patent with respect to certain prior art, which 01 maintains shows that Citrix's invalidity defense was a ruse to improperly assert a "practicing the prior art" defense to infringement. (Mot. at 41263-64.) The relevant portions of Foster's testimony are as follows:

[Mr. Cordell.] Now, Dr. Foster, I just went through the infringement, and I think *you said it was your opinion that the Citrix GoToMyPC system does not infringe.* Is that fair?

[Dr. Foster.] I don't thing think you asked me -- oh, yes. *That is my opinion.* Yes.

Q. Now I'm going to ask you a different question.

Dr. Foster, in your expert opinion, is the '479 patent, if faithfully applied according to its claims and the Court's definition, *is the '479 valid*?

A. So I'm not a lawyer, *but my opinion is yes, it is valid*.

Q. And yet, you're here to talk about invalidity, right?

A. I am, yes.

Q. So let me ask you a different question. If instead -- well, *Dr. Ganger says the GoToMyPC system infringes, right*?

A. He does.

Q. And you say it doesn't infringe?

A. Indeed.

Q. *If Dr. Ganger is right and the '479 patent claims cover systems where the end points create the channel, is the '479 patent valid?*

A. Again, I'm not a lawyer, but *my view it is invalid under those constraints*, yes.

Q. So let's see if we can look at some of this. We've heard a lot about BuddyHelp in this case. But can you remind the jury about what BuddyHelp is?

A. Yes, so it's a particular sort of remote access system.

                                        ***

Q. Did you consider documents about BuddyHelp as part of your analysis?

A. I looked at some documents. As many documents as I could. I also spent a lot of time looking at the source code. This here shows one of the documents I looked at. I think we've seen this earlier.

Q. Okay. And just take us briefly through the way the BuddyHelp system worked.

A. So the BuddyHelp system, essentially it's doing the same thing as GoToMyPC, but with some variance because it's trying to do something slightly different.

***

Q. Now, in your expert opinion, *have you compared the BuddyHelp system to the '479 patent claims using the Court's claim construction to determine whether or not it is covered by the claims*?

A. I have, yes.

Q. And what was your conclusion if you used the Court's claim construction and faithfully apply it?

A. *It is not covered by the claims*.

Q. *But if instead for some reason your analysis is wrong and Dr. Ganger's analysis is that a system that operates using the end points to create the channel is covered by the claims, is BuddyHelp covered*?

A. *I believe it is. Yes*.

(1/14/16 Tr. at 37820-23 (emphasis added).)

### Analysis

In order to run afoul of the "practicing the prior art" defense to literal infringement, Citrix would have to compare the prior art, instead of the accused product, to the limitations in the asserted claims of the '479 patent. *Tate*, 279 F.3d at 1366. But Citrix did not make this impermissible comparison. Foster's non-infringement analysis properly compared GoToMyPC—not the prior art—to claims 24 and 45 of the '479 patent to arrive at his opinion that GoToMyPC does not infringe the '479 patent. (*See* 1/14/16 Tr. at 37781-819.) Similarly in Citrix's invalidity defense, Foster's testimony properly compares the prior art (*e.g.* BuddyHelp and PCAnywhere) to the asserted claims of the '479 patent; he does not improperly compare the prior art to the accused product, GoToMyPC. (*See id*. at 37826-30.)

Citrix's argument that if GoToMyPC infringed the '479 patent then the patent was invalid, or, if GoToMyPC did not infringe the '479 patent then the patent was  valid, did not turn on improperly comparing prior art to the asserted claims (to prove non-infringement) or

improperly comparing prior art to the accused product (to prove invalidity). Rather, the argument turned on a difference of opinion between the parties' experts regarding how the communication channel was created in the '479 patent, GoToMyPC, and the prior art.[17] (*See id.* at 37832-33.)

In addition to properly comparing the prior art to the asserted claims of the '479 patent during the invalidity phase of his testimony, Foster also gave limited testimony directly comparing GoToMyPC with BuddyHelp,[18] ExpertLive,[19] and PCAnywhere.[20] But regardless of whether the totality of Foster's invalidity testimony could be construed as an improper use of

---

[17] In arriving at their respective opinions regarding the asserted claims and whether GoToMyPC read on the limitations of those claims, both experts state that they applied the Court's construction of the relevant claim terms.

[18] "[Mr. Cordell.] Okay. And just take us briefly through the way the BuddyHelp system worked.
[Dr. Foster.] So the BuddyHelp system, essentially it's doing the same thing as GoToMyPC, but with some variance because it's trying to do something slightly different." (1/14/16 Tr. 37822; *id.* at 37835.)

[19] "Q. And so, Dr. Foster -- well, this is a comparison of ExpertLive and GoToMyPC. Does the same analysis that you gave us with respect to BuddyHelp apply to this comparison as well?
A. It does, yes.
Q. Pretty much everything from the next down is architecturally the same?
A. Yes.
Q. Thank you. And then again did you do an analysis of the features of ExpertLive and compare them to GoToMyPC?
A. I did, yes." (1/14/16 Tr. 37825-26.)

[20] "Q. And did you do an analysis of the PC Anywhere system?
A. I did, yes.
Q. Did you actually look at the software and operate it?
A. I did not, no.
Q. So let's go through it just quickly. I believe you said the system was usable to connect a personal computer to a remote computer. Can you take us through how that happened?
A. Yeah, so, you know, at a high level, it's quite similar to GoToMyPC. We have a directory service which computers that are going to participate in the remote access system register with so that when their IP address changes we can keep track of their current IP address.
Someone who wants to access the remote computer first contacts this thing called the directory service which keeps track of IP addresses, retrieves the address.
It then has what it needs to establish the connection to the personal computer.
Q. So in the PC Anywhere, would you say the directory server facilitates the channel between the remote and personal computers?
A. Well, that's a word you could use, yes.
Q. But is it your opinion that simply facilitating a channel is enough to meet the claims of the '479 patent?
A. It is not, no."

(1/14/16 Tr. 37827-28.)

30

prior art with respect to Citrix's invalidity defense, that defense failed—the jury determined that the '479 patent was valid.

More importantly, an examination of the trial transcript shows that during its defense to literal infringement, Citrix did not improperly compare the prior art to the asserted claims of the '479 patent as a defense to literal infringement, but properly compared the accused product—GoToMyPC—to the asserted claims. Citrix's limited comparison of prior art to the accused product during the invalidity phase of the trial is an insufficient basis upon which to conclude that the jurors linked those comparisons to their infringement analysis. *See CNH Am. LLC v. Kinze Mfg., Inc.*, 809 F. Supp. 2d 280, 288-89 (D. Del. 2011). Moreover, the jury was specifically instructed by the Court that: "The determination of literal infringement depends on the presence of the claim elements in the accused product, not on similarities between the accused product and the prior art."  (1/15/16 Tr. at 38242.)

Given that Citrix did not improperly compare the prior art to the asserted claims as part of its infringement defense, any limited prejudice that may have resulted from the comparisons of prior art to GoToMyPC during the invalidity phase was cured by the Court's specific instruction to the jury regarding their determination of infringement. *See Holmes*, 78 F.3d at 1046–47 ("Although prejudice that affects the fairness of a proceeding can certainly be grounds for a new trial, when 'such prejudice is cured by instructions of the court, the motion for a new trial should be denied.'") (quoting *Clarksville–Montgomery Cnty. Sch. Sys. v. United States Gypsum Co.,* 925 F.2d 993, 1002 (6th Cir. 1991)); *see also, e.g., Smith v. Travelers Ins. Co.,* 438 F.2d 373, 375 (6th Cir. 1971) (holding that in light of the curative instructions given by the district court and the context of the entire record, the improper comments of the plaintiff's attorney were not so

prejudicial as to warrant a new trial).Thus, to the extent that any prejudice resulted from comparisons between GoToMyPC and prior art by Citrix in connection with invalidity, there is no reasonable probability that the jury's infringement verdict was influenced by prejudice, or that the infringement verdict was seriously erroneous. *Strickland*, 142 F.3d at 358; *Holmes,* 78 F.3d at 1045–46.

### 2. Inter partes reexamination record

01's second argument regarding prejudice is grounded in the Court's ruling on Citrix's motion in limine as to the manner in which the reexamination record could be used as evidence at trial. (Doc. No. 405.) After considering the requirements of Fed. R. Evid. 403, the Court ruled that the reexamination record could be used in a limited manner at trial, with one of the limitations being that Citrix could not be identified as the party that requested the reexamination. (Doc. No. 512 at 32877.) In so ruling, the Court concluded that while the parties are entitled to include all of the prior art considered by the patent office in advancing their claims,

> [i]t is of very minimal, if any, probative value as to who brought the prior art to the attention of the examiner. It fact, given the role of the jury in this case, it would be unfairly prejudicial to Citrix to attribute the reexamination request to Citrix or to indicate that it was Citrix that advanced certain arguments in the reexamination process. This is especially true since Citrix is only permitted to rely on a very limited type of evidence (patents and printed articles) when taking a position with the PTO during reexamination. The jurors may put undue weight on the fact that it was Citrix who advanced the arguments which, in the end, were rejected by the PTO, even though the PTO does not make its decision based upon the same standard as used in an infringement/invalidity lawsuit, nor does it have the benefit of the full array of evidence that will be presented to a jury for its consideration.

(*Id*. at 32876-77.)

01 contends that excluding evidence of the party requesting the inter partes reexamination is "without precedent in the case law," and prejudiced plaintiff because 01 could not put the reexamination evidence in context with Citrix's illegal "practicing the prior art" defense theory to infringement at trial. (Mot. at 41265.) In support, 01 cites the same portion of Citrix's opening statement that it cited in support of its "practicing the prior art" argument. (*Id.* (citing 1/11/16 Tr. at 33932).) 01 argues that the opening statement falsely claimed that 01, not Citrix, placed BuddyHelp before the Patent Office for review,[21] and falsely suggested that the patent office agreed with Citrix's view that BuddyHelp is different from the '479 patent[22] when, in fact, Citrix argued on reexamination that the '479 patent was invalid because BuddyHelp met the limitations of the '479 patent. In doing so, 01 contends that "counsel [for Citrix] suggested to the jury that the Patent Office supported Citrix's "practicing the prior art defense," knowing that Citrix had opposed that position in the Reexamination." (*Id.* at 41265-66.) According to 01, "[b]y allowing Citrix to obscure its own role in the reexamination – and particularly the fact that it had made arguments diametrically opposed to those argued by its trial counsel – the Court prejudicially prevented Communique from a full-on attack of the illegitimate 'practicing the prior art' defense to infringement." (*Id.* at 41267.)

---

[21] The relevant text states: "They put BuddyHelp in front of the patent office. It was put in front of the patent office."

[22] 01's representation of Citrix's opening statement is not accurate. The relevant text states as follows: "And what did the patent office say? The patent office said BuddyHelp is different [from the '479 patent]. … We agree with that."

Neither party cites any case law that addresses the issue of excluding the identity of the party requesting reexamination from evidence in a patent infringement trial. Some courts have limited the use of reexamination evidence by not permitting use of the word "reexamination" or evidence of the number of times prior art references were considered by the patent office, and requiring appropriate redactions. *See Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, No. CV 12-540-LPS, 2015 WL 10457176, at *1 (D. Del. Apr. 23, 2015) ("While there shall be no reference to 'reexamination,' evidence (including prior art) used during a reexamination is not inadmissible solely due to its use or even creation during a reexamination, provided that general terminology (e.g., 'prosecution history') is used and necessary redactions are made.") Such evidence of reexamination history may be excluded under the balancing test of Fed. R. Evid. 403:

> Whatever probative value there is to evidence that the PTO considered a particular piece of prior art on multiple occasions (i.e., during initial prosecution and again during reexamination) is substantially outweighed by the risk of jury confusion and the waste of the jury's time that would be necessitated to put in full context the details of the reexamination. Therefore, the balance under Federal Rule of Evidence 403 favors exclusion of the evidence of reexaminations at this jury trial. The parties may present evidence and argument that a prior art reference was considered by the PTO and the patent was granted, but may not present evidence or argument as to whether a prior art reference was *repeatedly* considered by the PTO and whether the patent was *repeatedly* allowed by the PTO.

*Masimo Corp. v. Philips Elec. N. Am. Corp.*, No. CV 09-80-LPS, 2014 WL 4246579, at *2 (D. Del. Aug. 27, 2014) (footnote omitted, emphasis in original).

Plaintiff cites to cases where the court issued special jury instructions regarding reexamination, but did not order redaction regarding post-issuance proceedings in the patent office. (Mot. at 41266.) But those cases are not on point, and only establish that courts may

arrive at different conclusions regarding the proper Rule 403 balance between prejudice and the probative value of evidence depending upon the particular facts of a case.

Moreover, plaintiff's only claim of prejudice resulting from the manner in which the Court limited evidence of the reexamination record is that the ruling "prejudicially prevented Communique from a full-on attack of the illegitimate 'practicing the prior art' defense to infringement." (Mot. at 41267.) The Court has concluded, however, the Citrix did not assert such an illegal defense theory to plaintiff's infringement claim that was prejudicial to plaintiff. Therefore, there is nothing that occurred at trial that changes the Court's conclusion that the probative value of identifying the party requesting reexamination is outweighed by the danger of jury confusion and prejudice to Citrix.

Accordingly, 01's motion for a new trial on this basis must be denied.

### III. CONCLUSION

For all of the foregoing reasons, it is hereby ordered that 01's motion for judgment as a matter of law and for a new trial (Doc. No. 580) is denied.

**IT IS SO ORDERED**.


Dated: March 21, 2017                          _____
                                               **HONORABLE SARA LIOI**
                                               **UNITED STATES DISTRICT JUDGE**